[S.F. No. 24919. Jan. 2, 1987.]

LEONARD COLE et al., Plaintiffs and Appellants, v. FAIR OAKS FIRE PROTECTION DISTRICT et al., Defendants and Respondents.

150

COUNSEL

Jed Scully and Scully & Scully for Plaintiffs and Appellants.

Joseph Posner as Amicus Curiae on behalf of Plaintiffs and Appellants.

Bolling, Walter & Gawthrop, Donald S. Walter and George E. Murphy for Defendants and Respondents.

Irell & Manella, James N. Adler, Gregory R. Smith, Keith B. Bardellini and David I. Gindler as Amici Curiae on behalf of Defendants and Respondents.

OPINION

BROUSSARD, J.— ▪ The main issue presented is whether an employee may maintain a civil action in the courts for intentional infliction of emotional distress against his employer and fellow employee when the conduct complained of has caused total, permanent, mental and physical disability compensable under workers' compensation law. We conclude that when the employee's claim is based on conduct normally occurring in the workplace, it is within the exclusive jurisdiction of the Workers' Compensation Appeals Board.

The trial court sustained the demurrer of defendants, Fair Oaks Fire Protection District and its assistant fire chief, without leave to amend on the ground that plaintiffs' claims came within the exclusive jurisdiction of the Workers' Compensation Appeals Board. The Court of Appeal affirmed as to eight of the ten causes of action alleged but reversed with directions to permit amendment of the complaint as to causes of action for defamation and for false light invasion of privacy. We granted plaintiffs' petition for review. There is no challenge to the Court of Appeal's holding that the causes of action for defamation and privacy are not barred by the exclusive remedy provisions of the Labor Code. Plaintiffs challenge the Court of Appeal determination that their other claims are within the exclusive jurisdiction of the board.

▪ The allegations of the complaint may be summarized as follows: [1]

---

[1] A general demurrer admits the proof of all material factual allegations in the complaint, and we are not concerned with the question of plaintiffs' ability to prove these allegations. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)

Leonard Cole enlisted as a volunteer firefighter in 1964 with the district, and in the next year he was appointed a full-time firefighter. In 1970 he was appointed engineer, and in 1977 he was promoted to captain. In March 1981 he was elected union representative and continued to serve in that capacity until April 1982.

In October 1981, he was diagnosed as having high blood pressure. His physician recommended rest and recreation. In February 1982 he was examined and again found to have elevated blood pressure. He was placed on medication. The elevated blood pressure was due to unreasonable stress and pressure by the assistant chief. As union representative Cole negotiated questions of contractual interpretation with management, and the assistant chief, although formerly the union representative, deliberately harassed him in the negotiations.

On one occasion the assistant chief demanded that Cole report to a meeting for performance evaluation and possible disciplinary action and refused to excuse him to attend a funeral.

Although Cole had repeatedly received superior performance ratings, the assistant chief devised a novel personnel evaluation procedure for Cole for the purpose of punishing him for his union activities. Cole was informed by various members of the fire department that the assistant chief and members of the management intended to take punitive action against him because of his union activities.

On May 11, Cole was placed on sick leave because of his hypertension. A doctor employed by the assistant chief reported that the level of hypertension disabled Cole from performing heavy duty and that he should be restricted to light duty until his blood pressure was better controlled.

Thereafter, the assistant chief notified him by mail that he was to present himself at a disciplinary hearing on June 3, 1982. The letter falsely asserted dishonesty as one of the grounds for the hearing. It stated that Cole had stated falsely that he was on workers' compensation and that he had been told by a county safety official not to report to work.[2] The assistant chief conducted the hearing before a panel of battalion chiefs. The hearing was a "kangaroo" proceeding.

Thereafter, on June 28, 1982, Cole was demoted to engineer, and was publicly stripped of his captain's badge. The assistant chief assigned him to

---

[2] Defendants have furnished the court with documents showing that Cole applied for workers' compensation benefits on June 14, and subsequently received an award of medical benefits.

perform "humiliating and menial duties," and he was ordered to return to duty from sick leave and assigned to work as a dispatcher, an entry level position.

On October 18, 1982, the Board of Directors of the Fair Oaks Fire Protection District reversed Cole's demotion and reinstated him as a captain at a reduced salary and placed him on probationary status. The assistant chief continued his harassment and sometime between July and September 1982, the assistant chief filed an application with the state to force Cole to retire involuntarily.

Cole's blood pressure was elevated by the continuous harassment, and on November 8, 1982, he suffered a severe and totally disabling cerebral vascular accident. He cannot move, care for himself, or communicate other than by blinking.

## I. THE STATUTES

The pertinent code sections were amended by the Legislature in 1982. The pre-1982 statutes are applicable to the instant case because Cole suffered his stroke prior to the effective date of the 1982 legislation. "It is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent." (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393 (182 P.2d 159].) If substantial changes are made, even in a statute which might ordinarily be classified as procedural, the operation on existing rights would be retroactive "because the legal effects of past events would be changed, and the statute will be construed to operate only in futuro unless the legislative intent to the contrary clearly appears." (*Id.,* at p. 394; *DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 173 [18 Cal.Rptr. 369, 367 P.2d 865].) In the absence of a showing that the Legislature intended the 1982 amendments to be applied retroactively, two Courts of Appeal have concluded that the substantive changes of the 1982 legislation do not apply retroactively. (*Perry* v. *Heavenly Valley* (1985) 163 Cal.App.3d 495, 500-505 [209 Cal.Rptr. 771]; *Horney* v. *Guy F. Atkinson Co.* (1983) 140 Cal.App.3d 923, 930, fn. 4 [190 Cal.Rptr. 18].) So far as appear there is no legislative history to the contrary. While it may be true, as defendants argue, that the Legislature constitutionally could have made the 1982 amendment retroactively effective, it is unnecessary to reach that issue since under established canons of interpretation it must be presumed that the Legislature did not intend retroactive application.

When Cole was injured, Labor Code section 3600[3] provided in pertinent part: "Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person . . . shall without regard to negligence, exist against an employer for any injury arising out of and in the course of employment. . . ."[4]

Section 3601 provided that where the "conditions of compensation exist," the right to recover compensation is "the exclusive remedy" for injury or death of an employee against the employer or coemployee acting within the scope of employment except that an employee shall "in addition to the right of compensation against the employer, have a right to bring an action at law for damages against such other employee," when the injury is proximately caused by the willful and unprovoked "physical" act of aggression of such other employee.[5]

---

[3] Unless otherwise indicated, all statutory references are to the Labor Code.

[4] Section 3600 provided: "Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as provided in section 3706, shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur:

"(a) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division.

"(b) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment.

"(c) Where the injury is proximately caused by the employment, either with or without negligence. . . ."

Section 3706 provided for actions for damages if the employer failed to pay compensation.

[5] Section 3601 provided: "(a) Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is, except as provided in Section 3706, the exclusive remedy for injury or death of an employee against the employer or against any other employee of the employer acting within the scope of his employment, except that an employee, or his dependents in the event of his death, shall, in addition to the right to compensation against the employer, have a right to bring an action at law for damages against such other employee, as if this division did not apply, in the following cases:

"(1) When the injury or death is proximately caused by the willful and unprovoked physical act of aggression of such other employee.

"(2) When the injury or death is proximately caused by the intoxication of such other employee. . . .

"(b) An act which will not sustain an independent action for damages against such other employee under paragraphs (1) [or] (2) . . . of subdivision (a) of this section may nevertheless be the basis of a finding of serious and willful misconduct under Section 4553 or 4553.1, if (1) such other employee is established to be one through whom the employer may be charged under Section 4553; (2) such act of such other employee shall be established to have been the proximate cause of the injury or death; and (3) such act is established to have been of a nature, kind, and degree sufficient to support a finding of serious and willful misconduct under Section 4553 or 4553.1.

"(c) In no event, either by legal action or by agreement whether entered into by such other employee or on his behalf, shall the employer be held liable, directly or indirectly, for damages awarded against, or for a liability incurred by such other employee under [paragraphs] (1) [or] (2) . . . of subdivision (a) of this section."

Prior to the 1982 amendments, section 4553 provided for an increase in the amount of compensation by one-half up to $10,000, where the employee was injured by the serious and willful misconduct of the employer, the employer's managing representative, or general superintendent.[6] The employer may not insure against an award under section 4553 although an insurer may provide insurance for the cost of defending against any "suit" for serious and willful misconduct of the employer or his agent. (Ins. Code, § 11661; *Mercer-Fraser Co.* v. *Industrial Acc. Com.* (1953) 40 Cal.2d 102, 108 [251 P.2d 955].)

## II. CASES INVOLVING EMPLOYER'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

 A number of Court of Appeal cases have addressed the question whether the exclusive remedy provisions of the compensation act prior to the 1982 amendment preclude an action for intentional infliction of emotional distress.[7]

*Renteria* v. *County of Orange* (1978) 82 Cal.App.3d 833, 838 et seq. [147 Cal.Rptr. 447], held that an employee could maintain an action for intentional infliction against the employer where there was no physical

---

"(d) No employee shall be held liable, directly or indirectly, to his employer, for injury or death of a coemployee except where the injured employee or his dependents obtain a recovery under subdivision (a) of this section."

[6] In 1982, the $10,000 limitation was removed.

[7] The elements of a cause of action for intentional infliction of emotional distress were stated in *Agarwal* v. *Johnson* (1979) 25 Cal.3d 932 [160 Cal.Rptr. 141, 603 P.2d 58]. A prima facie case requires (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress. There is liability for conduct "exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress. (See Prosser, Law of Torts (4th ed. 1971) p. 54.) Ordinarily mere insulting language, without more, does not constitute outrageous conduct. The Restatement view is that liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . . There is no occasion for the law to intervene . . . where some one's feelings are hurt." (Rest.2d Torts, § 46, com. d.) Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress. (Prosser, Law of Torts, *supra*, at pp. 57-58; Rest.2d Torts, § 46, coms. e, f; *Fletcher* v. *Western National Life Ins. Co.* [10 Cal.App.3d 376], *supra*, at p. 397 [89 Cal.Rptr. 78, 47 A.L.R.3d 286] (insurance agent's threatened and actual refusals to pay; threatening communication in bad faith to settle nonexistent dispute); *Alcorn* v. *Anbro Engineering Inc., supra*, at p. 496 (supervisor shouting insulting epithets; terminating employment; humiliating plaintiff); *Golden* v. *Dungan* [20 Cal.App.3d 295], *supra*, at p. 305 [197 Cal.Rptr. 577] (process server knowingly and maliciously banging on door at midnight).)' " (25 Cal.3d at pp. 946-947.)

injury or disability. The court pointed out that, unless an action at law were permitted in cases where there was no physical injury or disability, the employee would be left without any remedy whatsoever for the intentional tortious conduct. (82 Cal.App.3d at p. 839.) The court also reasoned that, like defamation, the action for intentional infliction of emotional distress is part of a class of civil wrongs outside the contemplation of the workers' compensation system and that the need to deter intentional wrongdoing was not met by the penalty provisions of section 4553 providing for a 50 percent surcharge because "50 percent of nothing is still nothing." (82 Cal.App.3d at p. 841.) The court stated that if the essence of the tort is nonphysical and injuries are of a nonphysical sort with physical harm being at most a make-weight the action should not be barred. (82 Cal.App.3d at p. 842.) A number of cases have followed *Renteria* in recognizing that an employee may maintain an action against the employer for intentional infliction of emotional distress. (E.g., *Young* v. *Libby-Owens Ford Co.* (1985) 168 Cal.App.3d 1037 [214 Cal.Rptr. 400]; *Iverson* v. *Atlas Pacific Engineering* (1983) 143 Cal.App.3d 219, 229-230 [191 Cal.Rptr. 696]; *McGee* v. *McNally* (1981) 119 Cal.App.3d 891, 895 [174 Cal.Rptr. 253]; *Lagies* v. *Copley* (1980) 110 Cal.App.3d 958, 970 et seq. [168 Cal.Rptr. 368].)

However, the language of *Renteria* and the last cited group of cases recognize that the basis of liability in part is that the employee had no substantial remedy under the workers' compensation law and that an employer should not be permitted to engage in intentional tortious conduct with neither compensation nor damages to deter him. Three cases have refused to extend *Renteria* to cases where there was substantial physical injury and disability and have held that when the employee alleges physical injury and disability compensable under that law or recovers under it, workers' compensation is the exclusive remedy of the employee. (*Hollywood Refrigeration Sales Co.* v. *Superior Court* (1985) 164 Cal.App.3d 754, 757 et seq. [210 Cal.Rptr. 619]; *Gates* v. *Trans Video Corp.* (1979) 93 Cal.App.3d 196, 204-206 [155 Cal.Rptr. 486]; *Ankeny* v. *Lockheed Missiles & Space Co.* (1979) 88 Cal.App.3d 531, 535-536 [151 Cal.Rptr. 828].)

We recognize that the distinction drawn by the foregoing cases presents an anomaly. Intentional infliction of emotional distress which results in physical injury and disability is ordinarily more reprehensible than intentional infliction of emotional distress which does not result in disability, but civil action is allowed only in the latter situation.

Nevertheless, *Renteria* and the cases following it do not offer support for plaintiffs' position. Obviously, the cases permitting maintenance of an action for intentional infliction of emotional distress are factually distinguishable because they do not involve substantial physical injury or disability.

Because the reasoning of the cases in permitting the action is largely based on the absence of any other deterrent to intentional tortious conduct, their application where other deterrents exist, such as compensation and the additional recovery under section 4553, would be to permit the tail to wag the dog. An implied exception to a statute should not be applied where the reason for the exception is not applicable.

On the other hand, the *Hollywood Refrigeration, Ankeny* and *Gates* cases, which denied a damage action because physical injury and disability were present, are not decisive in favor of defendant. They were primarily concerned with applying the rules and reasoning of *Renteria,* and did not extensively consider the possibility of other bases for permitting an action for intentional infliction of emotional distress.[8] We proceed to consider alternative bases for an exception to the exclusive remedy provisions of the Labor Code.[9]

### III. EMPLOYER'S INTENTIONAL MISCONDUCT

In *Johns-Manville Products Corp.* v. *Superior Court* (1980) 27 Cal.3d 465, 473 et seq. [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758], we held that an employee could state a cause of action against the employer where the employer fraudulently concealed from him, from his doctors and from the state that he was suffering from a work-related disease thereby preventing treatment and inducing him to continue working under hazardous conditions.

We considered at length the employer's liability for intentional misconduct and the exclusive remedy provisions of the Labor Code. "First we consider cases in which the intentional acts of the employer have been held not to justify an action at law. Compensation was determined to be the exclusive remedy for injuries suffered in a case in which the employer concealed the dangers inherent in the material the employees were required to handle (*Wright* v. *FMC Corp.* (1978) 81 Cal.App.3d 777, 779 [146 Cal.Rptr. 740]) or made false representations in that regard (*Buttner* v. *American Bell Tel. Co.* (1940) 41 Cal.App.2d 581, 584 [107 P.2d 439]). The same conclusion was reached on the basis of allegations that the employer was guilty of malicious misconduct in allowing an employee to use

---

[8] Actions for intentional infliction of emotional distress against an employer were upheld in *Agarwal* v. *Johnson, supra,* 25 Cal.3d 932 and *Alcorn* v. *Anbro Engineering, Inc., supra,* 2 Cal.3d 493, but neither case considered the exclusive remedy provisions of the Labor Code.

[9] We consider only common law causes of action. We do not decide whether the exclusive remedy provisions of the Labor Code bar causes of action created by statute.

a machine without proper instruction. (*Law* v. *Dartt* (1952) 109 Cal.App.2d 508, 509 [240 P.2d 1013].)

"The reason for the foregoing rule seems obvious. It is not uncommon for an employer to 'put his mind' to the existence of a danger to an employee and nevertheless fail to take corrective action. (See, e.g., *Rogers Materials Co.* v. *Ind. Acc. Com.* [(1965)] 63 Cal.2d 717, 723 [48 Cal.Rptr. 129, 408 P.2d 737].) In many of these cases, the employer does not warn the employee of the risk. Such conduct may be characterized as intentional or even deceitful. Yet if an action at law were allowed as a remedy, many cases cognizable under workers' compensation would also be prosecuted outside that system. The focus of the inquiry in a case involving work-related injury would often be not whether the injury arose out of and in the course of employment, but the state of knowledge of the employer and the employee regarding the dangerous condition which caused the injury. Such a result would undermine the underlying premise upon which the workers' compensation system is based. That system balances the advantage to the employer of immunity from liability at law against the detriment of relatively swift and certain compensation payments. Conversely, while the employee receives expeditious compensation, he surrenders his right to a potentially larger recovery in a common law action for the negligence or willful misconduct of his employer. This balance would be significantly disturbed if we were to hold, as plaintiff urges, that any misconduct of an employer which may be characterized as intentional warrants an action at law for damages. It seems clear that section 4553 is the sole remedy for additional compensation against an employer whose employee is injured in the first instance as the result of a deliberate failure to assure that the physical environment of the work place is safe.

"Thus, if the complaint alleged only that plaintiff contracted the disease because defendant knew and concealed from him that his health was endangered by asbestos in the work environment, failed to supply adequate protective devices to avoid disease, and violated governmental regulations relating to dust levels at the plant, plaintiff's only remedy would be to prosecute his claim under the workers' compensation law.

"But where the employer is charged with intentional misconduct which goes beyond his failure to assure that the tools or substances used by the employee or the physical environment of a workplace are safe, some cases have held that the employer may be subject to common law liability." (27 Cal.3d at pp. 473-475.)

The court pointed out that cases had permitted action for damages by the employee for an assault by the employer, for fraudulent misrepresentations

made as part of a conspiracy with a third party which concealed that the industrial injury was caused by the third party against whom the employee had recourse, and for assault, battery and intentional infliction of emotional distress based on an insurer's deceitful investigation. Those cases relied upon the factors that the employer's and insurer's misconduct had a questionable relationship to the employment and was not considered a risk of the employment. The court concluded that the cases reflect "a trend toward allowing an action at law for injuries suffered in the employment if the employer acts deliberately *for the purpose of injuring the employee* or if the harm resulting from the intentional misconduct consists of aggravation of an initial work-related injury." (27 Cal.3d at p. 476, italics added.) We followed *Johns-Manville* in the recent decision in *Foster* v. *Xerox Corp.* (1985) 40 Cal.3d 306, 310-312 [219 Cal.Rptr. 485, 707 P.2d 858], where we held that the action for fraudulent concealment did not require affirmative misrepresentations so long as it was shown that the employer knew of the industrial injury and that work aggravated it and concealed that knowledge from the employee.

Plaintiffs urge that the reasoning of *Johns-Manville* permits maintenance of an action for intentional infliction of emotional distress whether or not physical injury resulted where the tortious conduct has aggravated a compensable injury. Plaintiffs' contention appears too broad. As noted above (see fn. 7), the intent element for such a cause of action may consist of an intention to cause emotional distress or reckless disregard of the probability of causing emotional distress. To permit liability where the employer did not specifically intend to cause distress but his misconduct reflected a reckless disregard of the probability of injury would be contrary to *Johns-Manville.* As there pointed out: "It is not uncommon for an employer to 'put his mind' to the existence of a danger to an employee and nevertheless fail to take corrective action. . . . The focus of the inquiry in a case involving work-related injury would often be not whether the injury arose out of and in the course of employment, but the state of knowledge of the employer and the employee regarding the dangerous condition which caused the injury. Such a result would undermine the underlying premise upon which the workers' compensation system is based." (27 Cal.3d at p. 474.) Since awareness of the danger by the employer is not a basis for liability for damages, it follows that reckless disregard of the probability of injury should not warrant exemption from the exclusive remedy provisions of the Labor Code. In addition, recovery based on aggravation where there was no intent to injure might encourage employers to seek excuses to terminate rather than attempt to continue employment of injured persons.

Nevertheless, the question remains whether the exclusive remedy provisions exclude liability in a limited class of cases of intentional infliction of

emotional distress causing disability, namely, where the employer acts with the purpose of causing emotional distress. Permitting such an action would throw open the doors to numerous claims already compensable under the compensation law. An employer's supervisory conduct is inherently "intentional." In order to properly manage its business, every employer must on occasion review, criticize, demote, transfer and discipline employees. Employers are necessarily aware that their employees will feel distressed by adverse personnel decisions, while employees may consider any such adverse action to be improper and outrageous. Indeed, it would be unusual for an employee *not* to suffer emotional distress as a result of an unfavorable decision by his employer. (Cf. *Magnuson* v. *Burlington Northern, Inc.* (9th Cir. 1978) 576 F.2d 1367, 1369 ["[e]very employee who believes he has a legitimate grievance will doubtless have some emotional anguish occasioned by his belief that he has been wronged"].)

We have concluded that, when the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability. The basis of compensation and the exclusive remedy provisions is an injury sustained and arising out of the course of employment (former Lab. Code, §§ 3600, 3601), and when the essence of the wrong is personal physical injury or death, the action is barred by the exclusiveness clause no matter what its name or technical form if the usual conditions of coverage are satisfied. (See Larson, *Nonphysical Torts and Workmen's Compensation* (1975) 12 Cal. Western L.Rev. 1, 11-13.)

If characterization of conduct normally occurring in the workplace as unfair or outrageous were sufficient to avoid the exclusive remedy provisions of the Labor Code, the exception would permit the employee to allege a cause of action in every case where he suffered mental disability merely by alleging an ulterior purpose of causing injury. Such an exception would be contrary to the compensation bargain and unfair to the employer.

In addition, when the employer successfully defends the claim of unfairness in criticisms, reassignments, denial of promotions, or other frictions, he must pay disability benefits while the employee sues and may not recover such payments, because disabilities caused by stresses in the workplace are compensable whether or not the employer was at fault. The employer also may have to pay the costs of a successful defense. Liability for intentionally inflicting injury is not insurable, and if liability can only be established due

to such intentional misconduct, an insurer need not furnish a defense. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275-276, fn. 15 [54 Cal.Rptr. 104, 419 P.2d 168].) Finally, there is a substantial deterrent to employer intentional misconduct since the employer must not only pay compensation but also the additional recovery under section 4553 which may not be insured.

The cases that have permitted recovery in tort for intentional misconduct causing disability have involved conduct of an employer having a "questionable" relationship to the employment, an injury which did not occur while the employee was performing service incidental to the employment and which would not be viewed as a risk of the employment, or conduct where the employer or insurer stepped out of their proper roles. (*Johns-Manville Products Corp.* v. *Superior Court, supra,* 27 Cal.3d 465, 477-478; *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 630 [102 Cal.Rptr. 815, 498 P.2d 1063]; *Magliulo* v. *Superior Court* (1975) 47 Cal.App.3d 760, 779 [121 Cal.Rptr. 621]; *Ramey* v. *General Petroleum Corp.* (1959) 173 Cal.App.2d 386, 402 [343 P.2d 787].) Such circumstances are not alleged in the complaint before us.

To the contrary, the allegations in the instant case as to the *conduct* of the employer and the assistant chief reflect matters which can be expected to occur with substantial frequency in the working environment. Some harassment by superiors when there is a clash of personality or values is not uncommon. Disciplinary hearings and demotions and friction in negotiations as to grievances are also an inherent part of the employment setting as are decisions to seek disability retirement and demands to appear at meetings which interfere with personal arrangements.

## IV. The Dual Capacity Doctrine

Prior to 1982, when the employer engaged in a relationship with the employee which was distinct from that of employer and employee and invoked a different set of obligations than the employer's duties to its employee, the employee could recover damages for breach of the latter obligations under the dual capacity doctrine. (*Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 272 et seq. [179 Cal.Rptr. 30, 637 P.2d 266]; *D'Angona* v. *County of Los Angeles* (1980) 27 Cal.3d 661, 664 et seq. [166 Cal.Rptr. 177, 613 P.2d 238]; *Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d 616, 629-631; *Duprey* v. *Shane* (1952) 39 Cal.2d 781, 789-795 [249 P.2d 8].) In *Duprey,* the defendant doctor undertook to treat his employee's industrial injury, and it was held that he was liable for malpractice in the treatment under the dual capacity doctrine. In *D'Angona* it was held that under the dual capacity doctrine an employee of a hospital could maintain

an action for negligence against the hospital for negligent treatment of an industrial injury. In both cases, it was reasoned that the treatment was not part of the usual employer-employee relationship but that in undertaking to treat the employees the defendants were in the same relationship as they would be in treating members of the public. In *Bell,* the defendant manufacturer was held liable for its defectively manufactured product used by the employee, the court pointing out that other users could recover for such injuries. In *Unruh,* the employer's insurer was held liable for deceitful conduct in investigating the workers' compensation action.

In all of these cases, the conduct which gave rise to the dual capacity doctrine was an act not ordinarily part of the employment. In the instant case, as we have seen, all of the acts alleged are acts which normally occur within the course and scope of employment.[10]

We conclude that the dual capacity doctrine does not furnish a basis in this case to avoid the exclusive remedy provisions of the Labor Code.

## V. ADDITIONAL CAUSES OF ACTION

■ As to the additional causes of action, plaintiff Shirley Cole challenges the Court of Appeal ruling on her causes of action for intentional infliction of emotional distress and loss of consortium. We conclude that since her husband's claims are barred by the exclusive remedy provisions of the Labor Code, her claims are also barred.

Section 3600 provided that liability for compensation is "in lieu of any other liability whatsoever to any person," and section 3601 provided that compensation was "the exclusive remedy for injury or death of an employee against the employer or against any other employee." (See fns. 3, 4.) Under these provisions the Courts of Appeal have held that claims for loss of consortium are excluded where the spouse's injury giving rise to the loss is compensable under the compensation act. (*Santiago* v. *Employee Benefits Services* (1985) 168 Cal.App.3d 898, 906 [214 Cal.Rptr. 679]; *Casaccia* v. *Green Valley Disposal Co.* (1976) 62 Cal.App.3d 610, 612 [133 Cal.Rptr. 295]; *Williams* v. *State Compensation Ins. Fund* (1975) 50 Cal.App.3d 116, 123 [123 Cal.Rptr. 812]; *Gillespie* v. *Northridge Hosp. Foundation* (1971) 20 Cal.App.3d 867, 871 [98 Cal.Rptr. 134].) Although the cause of action for loss of consortium is not merely derivative or collateral to the spouse's cause of action (*Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382

---

[10] Plaintiffs have not relied upon the union allegations as furnishing a basis for invoking the dual capacity doctrine. This would seem to be a tactical decision perhaps based on available evidence. Thus, the issue is not presented.

[115 Cal.Rptr. 765, 525 P.2d 669]), it is based on the physical injury or disability of the spouse, and is precluded by the broad language of the Labor Code sections. (*Casaccia* v. *Green Valley Disposal Co., supra,* 62 Cal.App.3d 610, 612-613; *Williams* v. *State Compensation Ins. Fund, supra,* 50 Cal.App.3d 116, 123.)

In *Williams* v. *Schwartz* (1976) 61 Cal.App.3d 628, 631 et seq. [131 Cal.Rptr. 200], the court, relying on consortium cases, held that action for infliction of emotional distress for negligence of the spouse's employer in injuring the spouse was precluded by the broad language of the exclusive remedy provisions limiting the employer's liability. Where the employee's action for physical or mental injury is barred by the exclusive remedy provisions, there is no sound basis for distinguishing between negligent and intentional misconduct which causes emotional distress to the employee's spouse when the distress is due to the employee's injury.

The judgment of the Court of Appeal is affirmed.

Mosk, J., Reynoso, J., and Lucas, J., concurred.

Grodin, J., concurred in the judgment.

**PANELLI, J.**—I concur.

The narrow question presented is whether an employee's court action is barred by Labor Code section 3600 et seq. (workers' compensation), as they read prior to 1982, where his injury is otherwise compensable under those statutes. Here the specific tort alleged by the employee-plaintiff is intentional infliction of emotional distress. However, the facts underlying the action stem from, and arise out of, the course of an employer-employee relationship; that is, the employer's conduct cannot be analyzed outside of the employment context. This allegedly tortious conduct resulted in physical injury, for which the employee-plaintiff can recover under Labor Code section 3600 et seq.

Under these circumstances, to allow the employee-plaintiff to bring an independent court action would be to allow him to circumvent the carefully crafted legislative framework for employment-related injuries. Therefore, the action is preempted. Moreover, the spouse-plaintiff's action is barred because her injury stems from an injury to her husband that is compensable under Labor Code section 3600 et seq.

Based on the foregoing understanding of the majority's opinion, I concur.

**BIRD, C. J.**—I respectfully dissent. Today, this court holds that an employer, who purposefully injures an employee and subjects him to a campaign of harassment and humiliation so extreme that it " 'exceed[s] all bounds usually tolerated by a decent society' " (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 946 [160 Cal.Rptr. 141, 603 P.2d 58], quoting *Newby* v. *Alto Riviera Apartments* (1976) 60 Cal.App.3d 288, 297 [131 Cal.Rptr. 547]), is shielded from tort liability by the workers' compensation exclusivity provisions.[1] The majority's rationale for limiting an employee's remedy to workers' compensation is that the employer's outrageous behavior here constitutes "actions which are a normal part of the employment relationship . . . . ' (See maj. opn., *ante,* at p. 160.)[2]

I respectfully disagree. Cole alleges that the defendants "conspired to humiliate, harass and intimidate" him. Such a sustained and deliberate psychological assault designed to injure an employee is not a normal risk or condition of employment and is not "conduct normally occurring in the workplace." (See maj. opn., *ante,* at p. 151.)

Calling such behavior normal tacitly condones it. I cannot join in that view. Since workers' compensation does not compensate an employee for pain and suffering (1 Larson, Workmen's Compensation Law (1986) § 2.40, p. 11) and does not allow for punitive damages (*Johns-Manville Products Corp.* v. *Superior Court* (1980) 27 Cal.3d 465, 478 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758]) it does not sufficiently deter employers from engaging in such egregious conduct. Accordingly, I would hold that an employee's action at law for intentional infliction of emotional distress, which alleges that the employer acted "deliberately for the purpose of

---

[1] For the text of former Labor Code sections 3600 and 3601, which govern this case, see majority opinion, *ante,* at page 154, footnotes 4 and 5.

[2] The majority hold that conduct normally occurring in the workplace, which causes an injury compensable under the Workers' Compensation Act, may not serve as the basis for an action at law for intentional infliction of emotional distress. (Maj. opn., *ante,* at p. 160.) The majority apparently would not reach the question as to whether conduct that meets one but not the other of these standards is similarly barred by the act's exclusive remedy provisions.

The majority confuse the issue by noting that "when the essence of the wrong is personal physical injury or death, the action is barred by the exclusiveness clause no matter what its name or technical form. . . ." (Maj. opn., *ante,* at p. 160.) Determining whether the "essence" of the injury is physical or nonphysical is of limited value in construing the exclusive remedy provisions of the Workers' Compensation Act. California, unlike some states, provides workers' compensation benefits for both disabling-psychological and -physical injuries. (See *Traub* v. *Board of Retirement* (1983) 34 Cal.3d 793, 799 [195 Cal.Rptr. 681, 670 P.2d 335]; *Georgia-Pacific Corp.* v. *Workers' Comp. Appeals Bd.* (1983) 144 Cal.App.3d 72, 75 [192 Cal. Rptr. 643]; *Albertson's Inc.* v. *Workers' Comp. Appeals Bd.* (1982) 131 Cal.App.3d 308, 310 [182 Cal.Rptr. 304]; *Baker* v. *Workmen's Comp. Appeals Bd.* (1971) 18 Cal.App.3d 852, 861 [96 Cal.Rptr. 279]; Annot. (1980) 97 A.L.R.3d 161, 167, 174-176.)

injuring the employee" (*Johns-Manville, supra,* at p. 476), is impliedly exempted from the exclusive-remedy provisions of the Workers' Compensation Act and is not barred.[3]

The workers' compensation system represents an equitable compromise between the interests of employees and employers. " [I]t affords the exclusive remedy for the injury by the employee or his dependents against the employer and insurance carrier. This is part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, he is relieved of the prospect of large damage verdicts." (2A Larson, Workmen's Compensation Law, *supra,* § 65.11, pp. 12-1 to 12-6, fns. omitted.) As the majority note, however, the exclusivity provisions of the Workers' Compensation Act do not always prevail when the employer's misconduct is intentional. (See maj. opn., *ante,* at p. 161.)

In *Johns-Manville,* this court recognized that where the employee's injuries result from an unsafe workplace, the employee is generally limited to his or her workers' compensation remedy. (*Johns-Manville, supra,* 27 Cal.3d at pp. 473-474.) This is true even if the employer's failure to ensure a safe workplace is deliberate and "intentional or even deceitful." (*Id.,* at p. 474.) However, this court has held that "where the employer is charged with intentional misconduct which goes beyond his failure to assure that the tools or substances used by the employee or the physical environment of a workplace are safe, some cases have held that the employer may be subject to common law liability." (*Id.,* at p. 475.)

For example, our courts have permitted an action for damages where: 1) the employer physically assaulted an employee (*Magliulo* v. *Superior Court* (1975) 47 Cal.App.3d 760 [121 Cal.Rptr. 621]); 2) the employer conspired with a third party to conceal the latter's liability for the injury (*Ramey* v. *General Petroleum Corp.* (1959) 173 Cal.App.2d 386, 400-403 [343 P.2d 787]); and 3) the employer's workers' compensation insurer conducted a deceitful investigation of a claim (*Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616 [102 Cal.Rptr. 815, 498 P.2d 1063]).

---

[3] This rule is similar to rules in other states where an employee is free to sue his employer when the employer acts deliberately to injure the employee. (See e.g., *Johnson* v. *Kerr-McGee Oil Industries, Inc.* (Ariz.App. 1981) 129 Ariz. 393 [631 P.2d 548, 552-553]; *Serna* v. *Statewide Contractors, Inc.* (1967) 6 Ariz.App. 12 [429 P.2d 504, 507]; *Griffin* v. *George's, Inc.* (1979) 267 Ark. 91, 96 [589 S.W.2d 24, 27]; *Great Western Sugar Co.* v. *District Ct.* (1980) 188 Mont. 1 [610 P.2d 717, 720]; *Bakker* v. *Baza'r, Inc.* (1976) 275 Ore. 245, 253-254 [551 P.2d 1269, 1274]; *Houston* v. *Bechtel Assoc. Professional Corp.* (D.D.C. 1981) 522 F.Supp. 1094, 1096; see also Ariz. Rev. Stat. Ann. § 23-1022 (1986 Supp.); Ky. Rev. Stat. Ann. § 342.610(4) (Baldwin 1986); Md. Ann. Code art. 101, § 44 (1957); Ore. Rev. Stat. § 656.156(2) (1985); Wash. Rev. Code Ann. § 51.24.020 (1987 Supp.); W. Va. Code Ann. § 23-4-2 (Michie 1985).)

In these cases, the courts characterized the employer's intentional misconduct as outside the scope of the normal risks or conditions of employment. (See *Magliulo, supra,* 47 Cal.App.3d at p. 779; *Ramey, supra,* 173 Cal.App.2d at pp. 402-403; *Unruh, supra,* 7 Cal.3d at p. 630; maj. opn., *ante,* at p. 159.) In *Johns-Manville,* this court concluded that our caselaw reflects "a trend toward allowing an action at law for injuries suffered in the employment if *the employer acts deliberately for the purpose of injuring the employee* or if the harm resulting from the intentional misconduct consists of aggravation of an initial work-related injury." (*Johns-Manville, supra,* 27 Cal.3d at p. 476, italics added.)

Here, the employer's misconduct is analogous to incidents in which an employer physically assaults an employee. In *Magliulo,* the Court of Appeal held that an employee's action against an employer for physical assault is an implied exception to the exclusive-remedy provisions of the Workers' Compensation Act. (See *Magliulo, supra,* 47 Cal.App.3d at pp. 777-778, 779.) The court in *Magliulo* noted that such activity has a "questionable relationship to the general conditions of employment." (47 Cal.App.3d at p. 779.)

*Magliulo* was explained in *Johns-Manville.* "[A]lthough an employee might be willing to surrender his right to an action at common law for the ordinary type of work-related injuries, it is not equally clear that when he accepts employment he contemplates his employer might assault him or if an assault occurs he must be satisfied with the additional compensation provided by section 4553." (27 Cal.3d at p. 477; *Magliulo, supra,* 47 Cal.App.3d at p. 778.)

It is similarly inconceivable that an employee would contemplate that his employer would deliberately subject him to a campaign of extreme and outrageous psychological assault for the purpose of injuring him and that, if such an assault occurred, he would have to be satisfied with the limited compensation provided by the Workers' Compensation Act. Such an intentional course of harassment and humiliation, like a physical assault, is not a normal risk or condition of employment and the Legislature could not have intended to bar actions at law for such egregious assaults.

This conclusion is supported by an examination of the goal of the workers' compensation system. Workers' compensation is not designed to make injured workers whole, "but to keep them from becoming burdens on the community." (Note, *Intentional Torts Under Workers' Compensation statutes: A Blessing or a Burden?* (1983) 12 Hofstra L.Rev. 181, 185 (hereafter *Intentional Torts*).) Therefore, "[t]he only injuries compensated under Workers' Compensation are those which produce disability and, thereby,

affect earning power. Damages for pain and suffering are not available . . . ." (*Ibid.*)

Under the workers' compensation system, the "employee relinquishes the right to recover a potentially greater award for damages" and "the employer assumes liability without fault. . . ." (*Iverson* v. *Atlas Pacific Engineering* (1983) 143 Cal.App.3d 219, 223 [191 Cal.Rptr. 696].) The employee receives "swift and certain compensation for injury" and the employer "is relieved of the prospect of a large civil verdict." (*Ibid.*)

While this bargain appears fair where the employer's conduct is negligent or even reckless, it is difficult to justify shielding the employer from "the full brunt of liability" where, as here, the employer has acted intentionally and with the purpose of injuring the employee. (Com., *Johns-Manville Products Corp. v. Superior Court: The Not-So-Exclusive Remedy Rule* (1981) 33 Hastings L.J. 263, 270 (hereafter *The Not-So-Exclusive Remedy Rule*); Tomita, *The Exclusive Remedy of Workers' Compensation for Intentional Torts of the Employer: Johns-Manville Products v. Superior Court* (1982) 18 Cal. Western L.Rev. 27, 45 (hereafter *Tomita*).)

Since the workers' compensation system shields the employer from full liability, it does not provide a deterrent sufficient to prevent employers from engaging in such egregious behavior. A workers' compensation award will normally be much smaller than a tort damages award (see *Intentional Torts, supra,* 12 Hofstra L.Rev. at pp. 185-186) and, at any rate, the workers' compensation award will be paid by the employer's insurance carrier. Moreover, punitive damages are not available under the Workers' Compensation Act; they are "afforded only in an action at law." (*Johns-Manville, supra,* 27 Cal.3d at p. 478.)

Although section 4553 of the Labor Code provides that "[t]he amount of compensation otherwise recoverable shall be increased one-half" when the employer's misconduct is "serious and willful," this "is additional compensation and does not represent exemplary damages" (*Johns-Manville, supra,* 27 Cal.3d at p. 478, fn. 12).[4] In sum, "the deterrent effect of large damage awards, one of the basic objectives of tort law and of any loss-distribution system, is not realized when workers' compensation is the exclusive remedy for an intentional tort." (*The Not-So-Exclusive Remedy Rule, supra,* 33 Hastings L.J. at p. 270.)

---

[4] The majority argue that section 4553 creates a "substantial deterrent" to intentional employer misconduct because an employer cannot insure against such liability. (Maj. opn., *ante,* at pp. 160-161.) However, given the "low benefits" payable under the workers' compensation system (see *The Not-So-Exclusive Remedy Rule, supra,* 33 Hastings L.J. at p. 266, and fn. 20), an out-of-pocket payment of one-half of such an amount will not necessarily suffice to deter employer misconduct.

Despite the policy considerations weighing in favor of allowing an action at law where, as here, the employer acts with the purpose of causing emotional distress, the majority argue that the Legislature could not have intended such a result because "[p]ermitting such [ ] action[s] would throw open the doors to numerous claims already compensable under the compensation law." (Maj. opn., *ante,* at p. 160.)

The majority contend that "[a]n employer's supervisory conduct is inherently 'intentional' " and employees may consider such conduct, at times, to be "improper and outrageous." Moreover, "demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances" are a standard part of the workplace. (Maj. opn., *ante,* at p. 160.) However, Cole does *not* allege merely a series of "adverse personnel decisions. . . ." (See *ibid.*) He states that his employer singled him out and subjected him to an extreme and outrageous campaign of humiliation and harassment for the purpose of causing him emotional distress.

Contrary to the majority's characterization, Cole has not alleged merely "[s]ome harassment by superiors . . . ." (Maj. opn., *ante,* at p. 161.) Instead, he contends that the defendants conspired to humiliate him and, with knowledge of his hypertension, subjected him to unconscionable and unreasonable psychological pressure. Cole alleges, inter alia, that he was made to answer trumped-up charges of misconduct, was wrongly demoted, and was subjected to repeated public humiliation. He further alleges that these acts were engaged in for the purpose of causing him injury.

I cannot accept the majority's conclusion that such conduct "can be expected to occur with substantial frequency in the working environment." (Maj. opn., *ante,* at p. 161.) Therefore, allowing an action at law in circumstances such as these poses no real threat to the workers' compensation system.

The majority contend that if this court were to exempt claims such as these from the workers' compensation exclusivity provisions, employees could always get into court by alleging outrageous conduct and an ulterior purpose to injure. However, under the rule that I would propose, an employee, in order to file an action at law, would have to allege: 1) intentional infliction of emotional distress, i.e., conduct that is so outrageous that it "exceeds all bounds usually tolerated by a decent society' " (*Agarwal* v. *Johnson, supra,* 25 Cal.3d at p. 946, quoting *Newby* v. *Alto Riviera Apartments, supra,* 60 Cal.App.3d at p. 297); and 2) that the employer acted

"deliberately for the purpose of injuring the employee" (*Johns-Manville, supra,* 27 Cal.3d at p. 476).[5]

The majority apparently assume that the plaintiffs and their attorneys would allege such serious misconduct even when the charges could not be proved. However, plaintiffs cannot recover in an action at law unless they prove their claims of intentional and purposeful wrongdoing. If they cannot do so, plaintiffs or their attorneys must bear the substantial cost of prosecuting the tort action. I do not share the majority's belief that recognition of this implied exception to the workers' compensation exclusivity provisions would "be contrary to the compensation bargain and unfair to the employer." (Maj. opn., *ante,* at p. 160.)[6]

Finally, the majority distinguish the situation presented here from the facts alleged in other California cases that have permitted recovery in tort for intentional misconduct by the employer. Those cases, they argue, "have involved conduct of an employer having a 'questionable' relationship to the employment, an injury which did not occur while the employee was performing service incidental to the employment and which would not be viewed as a risk of the employment, or conduct where the employer or insurer stepped out of their proper roles." (Maj. opn., *ante,* at p. 161.)

---

[5] The second requirement would limit the number of cases that could evade the exclusive remedy provisions of the Workers' Compensation Act. For example, an intentional infliction of emotional distress action based on "reckless disregard of the probability of causing emotional distress" (*Agarwal* v. *Johnson, supra,* 25 Cal.3d at p. 946, quoting *Newby* v. *Alto Riviera Apartments, supra,* 60 Cal.App.3d at p. 297) does not involve purposeful conduct. (See *Tomita, supra,* 18 Cal. Western L.Rev. at p. 45.) Moreover, not all intentionally tortious acts are done with the purpose of causing injury. (Prosser & Keeton, Torts (5th ed. 1984) § 8, pp. 34, 35 ["intent is broader than a desire or purpose to bring about physical results. It extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does"].)

[6] The majority argue that actions such as Cole's should be barred because the employer "must pay disability benefits while the employee sues and may not recover such payments, because disabilities caused by stresses in the workplace are compensable whether or not the employer was at fault." (Maj. opn., *ante,* at p. 160.) This argument is unpersuasive. The obligation to pay workers' compensation benefits is statutory and obviously applies even where an action at law is not filed. Allowing the employee to sue would be unfair to the employer only if the successful plaintiff were allowed to retain workers' compensation benefits received for the same injuries. Such double recovery would not occur, however, because the employer is entitled to a setoff against any damages already awarded the employee for work-related injuries. (See *Johns-Manville, supra,* 27 Cal.3d at pp. 478-479.)

Furthermore, the majority contended that allowing an action at law in these circumstances is unfair because "[t]he employer . . . may have to pay the costs of a successful defense." (Maj. opn., *ante,* at p. 160.) However, assuming that "[l]iability for intentionally inflicting injury is not insurable," (maj. opn., *ante,* at p. 160), employers may still contract with their insurers to cover the cost of defending an action alleging such misconduct. (See *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 277, 278 [54 Cal.Rptr. 104, 419 P.2d 168]; *The Not-So-Exclusive Remedy Rule, supra,* 33 Hastings L.J. at p. 267, fn. 27; see also maj. opn., *ante,* at p. 155.)

However, the psychological assault described in Cole's complaint, like the physical assault in *Magliulo,* bears a "questionable relationship to general conditions of employment." (*Magliulo* v. *Superior Court, supra,* 47 Cal.3d at p. 779.) Also, the employer certainly stepped out of its proper role by conspiring to injure Cole. (See *Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d at p. 630 [employer stepped out of proper role when it intentionally embarked on a deceitful course of conduct that injured the employee].) Like the fraud perpetrated in *Ramey* v. *General Petroleum Corp., supra,* 173 Cal.App.2d 386, the Legislature never intended that the conduct alleged here was a normal risk of employment. (*Id.,* at pp. 402-403.)

Since Cole has alleged that his employer singled him out and subjected him to an extreme and outrageous campaign of harassment for the purpose of causing him injury, his cause of action for intentional infliction of emotional distress is not barred by the exclusivity provisions of the Workers' Compensation Act.[7]

Appellants' petition for a rehearing was denied February 11, 1987.

---

[7] Since Cole's claims should not be barred by the Workers' Compensation Act, I would find that his wife's claims were properly before the trial court.