[No. B046357. Second Dist., Div. Five. Apr. 19, 1991.]

LOS ANGELES UNIFIED SCHOOL DISTRICT, Plaintiff and Respondent, v.
THE STATE OF CALIFORNIA et al., Defendants and Appellants.

COUNSEL

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, N. Eugene Hill, Assistant Attorney General, and Henry G. Ullerich, Deputy Attorney General, for Defendants and Appellants.

Ron Apperson and Howard Friedman for Plaintiff and Respondent.

OPINION

BOREN, J.—The Los Angeles Unified School District (District) filed with the Board of Control of the State of California (Board) a claim in 1980 seeking reimbursement for the financial costs of complying with legislation (Stats. 1973, ch. 993) which created the California Occupational Safety and Health Administration (Cal/OSHA). The District claimed approximately $45,000 in reimbursements as a result of Cal/OSHA's regulations, standards and orders, which required the District to modify several school

buildings and other facilities by installing or repairing a myriad of safety-related items. Following the Board's denial of the District's claim for reimbursement and the Los Angeles Superior Court's initial denial of the District's petition for a writ of mandate, this Division of the Court of Appeal reversed and remanded the cause on a procedural matter and not on the merits. (*Los Angeles Unified School Dist.* v. *State of California* (1988) 199 Cal.App.3d 686 [245 Cal.Rptr. 140].) Upon remand, the superior court granted the District's petition for a writ of mandamus and commanded the Board to set aside the denial of the District's claim for reimbursement. The Board appeals, and we reverse.

## DISCUSSION

The Board contends that the duty to provide a safe workplace was an obligation of the school districts because of preexisting safety orders and the continuous jurisdiction of the Department of Industrial Relations over school districts. As the Board views the matter, to the extent that the 1973 legislation creating Cal/OSHA required additional costs and duties of all employers, the legislation did not either require a new service to the public or impose unique requirements on local government that do not apply generally to all residents and entities in the state. According to the Board, the Cal/OSHA legislation did not create any new programs or an increased level of services within the meaning of relevant reimbursement provisions and case law addressing reimbursement of state-mandated costs and therefore did not lead to reimbursable expenses.

The reimbursement provisions at issue are article XIII B, section 6 of the California Constitution[1] and former sections 2231 and 2207.5 of the Revenue and Taxation Code.[2] We hold that as a matter of law (see *Los Angeles*

---

[1] Article XIII B, section 6 of the California Constitution provides, in pertinent part, as follows: "Whenever the Legislature or any state agency mandates a new program or higher level of service on any local government, the state shall provide a subvention of funds to reimburse such local government for the costs of such program or increased level of service, except that the Legislature may, but need not, provide such subvention of funds . . . [in several specified situations, including] [¶] (c) Legislative mandates enacted prior to January 1, 1975, or executive orders or regulations initially implementing legislation enacted prior to January 1, 1975." (Adopted Nov. 6, 1979, effective July 1, 1980.)

[2] The pertinent former provisions of the Revenue and Taxation Code applicable when the District's claim was denied have since been repealed, and the subject matter is now addressed in Government Code section 17500 et seq. (See *Los Angeles Unified School Dist.* v. *State of California, supra,* 199 Cal.App.3d at p. 689, fn. 2.)

Former Revenue and Taxation Code section 2231, subdivision (a) provided: "The state shall reimburse each local agency for all 'costs mandated by the state,' as defined in Section 2207. The state shall reimburse each school district only for those 'costs mandated by the

*Unified School Dist.* v. *State of California, supra*, 199 Cal.App.3d at p. 689; *Carmel Valley Fire Protection Dist.* v. *State of California* (1987) 190 Cal.App.3d 521, 536 [234 Cal.Rptr. 795]), no provision mandates the reimbursement of costs incurred under the Cal/OSHA law, and the District thus has not established a right to reimbursement.

The District's petition for writ of mandamus claimed a right to reimbursement, not under article XIII B, section 6 of the California Constitution, but under the Revenue and Taxation Code provisions. On appeal, the District does not address the Revenue and Taxation Code provisions, but only article XIII B, section 6.

■ The District may urge for the first time on appeal that its claim is dependent upon the California Constitution article XIII B, section 6. The District's claim regarding this constitutional provision can be belatedly raised because it raises a purely legal question involving no disputed facts. (See *Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534]; *Bayside Timber Co.* v. *Board of Supervisors* (1971) 20 Cal.App.3d 1, 4 [97 Cal.Rptr. 431].)

■ Nonetheless, this constitutional provision does not require reimbursement for expenditures pursuant to a statute enacted as early as 1973, the year Cal/OSHA legislation was enacted. The District ignores the language in the provision itself that "the Legislature may, *but need not*, provide such subvention of funds for the following mandates: . . . (c) Legislative mandates enacted *prior to January 1, 1975*, or executive orders or regulations implementing legislation enacted prior to January 1, 1975." (Cal. Const., art. XIII B, § 6, italics added.) Since the Cal/OSHA legislation at issue was enacted in 1973 (Stats. 1973, ch. 993), the Legislature was not required to provide subvention of funds.

The District's abandonment on appeal of its claim to subvention of funds based on the Revenue and Taxation Code provisions is understandable. Revenue and Taxation Code section 2231, the statutory basis for the District's petition alleging a right to reimbursement, was repealed in 1986.

---

state' as defined in Section 2207.5." (Stats. 1978, ch. 794, § 1.1, p. 2546, repealed by Stats. 1986, ch. 879, § 23, p. 3045.)

Former Revenue and Taxation Code section 2207.5 provided, in pertinent part, that "[c]osts mandated by the state" which "a school district is required to incur" include costs increased by reason of a law enacted "after January 1, 1973," which "mandates a new program or increased level of service of an existing program." (Stats. 1977, ch. 1135, § 5, p. 3646, amended by Stats. 1980, ch. 1256, § 5, p. 4248, repealed by Stats. 1989, ch. 589, § 8.)

(Stats. 1986., ch. 879, § 23, p. 3045.) In 1989, Revenue and Taxation Code section 2207.5 was also repealed. (Stats. 1989, ch. 589, § 8.) **(3)** It is well settled that, as here, when an action is dependent upon a statute which is later repealed, the action cannot be maintained. (*Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 109 [145 Cal.Rptr. 674, 577 P.2d 1014]; see *Governing Board* v. *Mann* (1977) 18 Cal.3d 819, 829 [135 Cal.Rptr. 526, 558 P.2d 1].)

 Although the Legislature repealed its authorization for subvention of funds for costs mandated by the state by reason of a law enacted after January 1, 1973 (see former Rev. & Tax. Code, §§ 2231 & 2207.5), the repealing legislation also added (Stats. 1986, ch. 879) and amended (Stats. 1989, ch. 589) provisions in the Government Code (§ 17500 et seq.) which address the same subject. Government Code section 17561, subdivision (a) provides: "The state shall reimburse each local agency and school district for all 'costs mandated by the state' as defined in Section 17514." (Stats. 1986, ch. 879, § 6, p. 3041, amended most recently by Stats. 1989, ch. 589, § 1.5 (No. 4 Deering's Adv. Legis. Service, pp. 1828-1829).) Government Code section 17514, enacted in 1984, provides: " 'Costs mandated by the state' means any increased costs which a local agency or school district is required to incur after July 1, 1980, as a result of any statute enacted on or after January 1, 1975, or any executive order implementing any statute enacted on or after January 1, 1975, which mandates a new program or higher level of service of an existing program within the meaning of Section 6 of Article XIII B of the California Constitution." (Stats. 1984, ch. 1459, § 1, p. 5114.)[3]

As indicated above (*ante*, p. 555), the Legislature in 1986 and 1989 repealed provisions which permitted the subvention of funds for costs mandated by the state as to laws enacted after January 1, 1973, and it enacted provisions which permitted reimbursement for costs mandated by the state incurred after July 1, 1980, as a result of a statute enacted on or after January 1, 1975. This legislative chronology reveals that there is no present legislative intent to provide subvention as to pre-1975 statutes. (See *California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].)[4] The Legislature's abolition of the right to

---

[3] We also note that all the costs for which the District seeks reimbursement were incurred in 1978 and 1979 and thus prior to the July 1, 1980, statutory cutoff date. The District's petition has thus also failed to allege sufficient facts to bring its claim not only within the cutoff date of the statute involved, but within the cutoff date for the costs incurred.

[4] The Board raised for the first time in its reply brief in this appeal that the statutory changes established a legislative intent not to provide subvention as to pre-1975 statutes. At oral argument, the District argued that the Board had waived the issue as to the statutory changes and was barred from belatedly raising it. Generally, an issue must be raised in the trial court to be preserved for appeal. (*Parker* v. *City of Fountain Valley* (1981) 127

subvention as to pre-1975 statutes, obviating reimbursement for mandated costs relating to the 1973 Cal/OSHA legislation, constituted the lawful abolition of a right prior to final judgment in the present case. As in the present case, ". . . when a right of action does not exist at common law, but depends solely upon a statute, the repeal of the statute destroys the right unless the right has been reduced to final judgment or unless the repealing statute contains a saving clause protecting the right in a pending litigation." (*Krause* v. *Rarity* (1930) 210 Cal. 644, 652 [293 P. 62, 77 A.L.R. 1327]; see *Southern Service Co., Ltd.* v. *Los Angeles* (1940) 15 Cal.2d 1, 11-12 [97 P.2d 963].)

The propriety of the Legislature's repeal of the Revenue and Taxation Code provisions which supported a right to reimbursement was recognized, with apparent foresight, in *County of Los Angeles* v. *State of California* (1984) 153 Cal.App.3d 568 [200 Cal.Rptr. 394]. "[T]he mandatory provisions of Revenue and Taxation Code section 2231 do not restrict legislative power. The Legislature remains free to amend or repeal section 2231 as it applies to pre-1975 legislative mandates. [Citations.]" (*Id.* at p. 573.) When the Legislature repealed sections 2231 and 2207.5 and left legislation limiting reimbursement for costs mandated by the state to costs incurred "as a result of any statute enacted on or after January 1, 1975" (Gov. Code, § 17561, subd. (a)), it effectively precluded reimbursement for costs incurred as a result of the 1973 Cal/OSHA legislation.

As this court recently observed in an unrelated state mandate context, "The legislature [has] consistently limited reimbursement of costs by reference to the effective dates of statutes and executive orders and nothing indicates the state intended recovery of costs to be open-ended." (*Long Beach Unified Sch. Dist.* v. *State of California* (1990) 225 Cal.App.3d 155, 179 [275 Cal.Rptr. 449].) In view of our conclusion that the Legislature has effectively precluded reimbursement for the District's claimed costs, we need not determine whether the 1973 Cal/OSHA legislation created a new obligation on the part of the District or mandated a new program or increased level of service within the meaning of *County of Los Angeles* v. *State of California* (1987) 43 Cal.3d 46, 56 [233 Cal.Rptr. 38, 729 P.2d 202].

Cal.App.3d 99, 117 [179 Cal.Rptr. 351].) However, as we previously discussed when permitting the District to belatedly raise its constitutional claim (*ante*, p. 555), an appellate court has the discretionary power to hear a new issue where no controverted facts are involved and the issue is a question of law. (*California Pools, Inc.* v. *Pazargad* (1982) 131 Cal.App.3d 601, 604 [182 Cal.Rptr. 568].) Although the question of law regarding the statutory changes was raised by the Board in its reply brief rather than in its opening brief (see *Nelson* v. *Gaunt* (1981) 125 Cal.App.3d 623, 641 [178 Cal.Rptr. 167]), the District had an opportunity to respond and did so during oral argument.

Finally, as the Board views the matter, new costs to school districts were proximately caused by specific new safety orders and not by the 1973 Cal/OSHA statute, which merely established state agencies to adopt standards, hear appeals and investigate and penalize for violations. The Board cites other contexts in which it has determined that specific regulations constitute reimbursable mandates. (See, e.g., *County of Los Angeles* v. *Department of Industrial Relations* (1989) 214 Cal.App.3d 1538, 1542 [263 Cal.Rptr. 351] [elevator earthquake safety regulations]; *Carmel Valley Fire Protection Dist.* v. *State of California, supra,* 190 Cal.App.3d at p. 535 [firefighter protective clothing and equipment required by administrative code sections].) The Board thus urges that upon the filing of a specific claim arising from a specific regulation by Cal/OSHA, the Board may receive evidence on the old duties and the new duties and determine the quantum of increased costs, although a hearing involving all safety orders at one time is a practical impossibility.

It appears that the Board, whose functions were transferred to a new Commission on State Mandates (Gov. Code, §§ 17525, 17630; Stats. 1984, ch. 1459, § 1, pp. 5115-5117; amended by Stats. 1985, ch. 179, § 4, pp. 1111-1112, eff. July 8, 1985, operative Jan. 1, 1985), seeks judicial permission to entertain claims of whether specific orders and regulations pertaining to Cal/OSHA contain state mandated costs.[5] We decline the invitation to rule on such a theoretical issue involving claims not involved in the present case. To the extent that the Board is concerned with the safety orders and regulations mandating the costs incurred in the present case, such orders and regulations cannot arise in a vacuum. Safety orders and regulations must have some specific legislation as a statutory predicate. Even assuming that the District had adequately pleaded specific Cal/OSHA orders and regulations, neither the Board nor the District alleges that any costs claimed were incurred as a result of any post-1975 legislation. There is no indication in the record that the costs incurred by the District, even if relating to post-1975 safety orders and regulations, were incurred "as a result of" (Gov. Code, § 17561, subd. (a)) anything other than the pre-1975 Cal/OSHA legislation. The District's costs are thus unreimbursable.

---

[5] When this case was previously before this court and was remanded on a procedural matter, we noted as follows: "As we understand District's position, it contends the trial court erred in refusing to consider the question of law whether [the Cal/OSHA legislation reflected in] Statutes 1973, chapter 993 *itself* comes within the meaning of section 2207.5. We assume District does not contest that portion of the trial court's judgment which holds that District has not adequately pleaded specific *executive orders and regulations* pertaining to Cal OSHA which might contain state mandated costs." (*Los Angeles Unified School Dist.* v. *State of California, supra,* 199 Cal.App.3d at p. 692, fn. 8, italics in original.)

## DISPOSITION

The judgment is reversed, and the superior court is directed to deny the petition for a writ of mandate. Each party to bear its own costs on appeal.

Turner, P. J., and Ashby, J., concurred.