[No. B087247. Second Dist., Div. One. July 9, 1996.]

BILLY CROSS et al., Plaintiffs and Appellants, v.
BONDED ADJUSTMENT BUREAU, Defendant and Respondent.

## COUNSEL

Kevin Meenan for Plaintiffs and Appellants.

Scott D. Raphael for Defendant and Respondent.

## OPINION

**MASTERSON, J.**—Plaintiffs Billy and Delores Cross retained Bonded Adjustment Bureau (Bonded), a collection agency, to enforce a judgment in the principal amount of approximately $150,000. Based on Bonded's advice, the Crosses gave the judgment debtor a full satisfaction of judgment in exchange for $40,000.

Later, the Crosses brought this action against Bonded and others, alleging that defendants had engaged in wrongful conduct in attempting to collect on the judgment. The second amended complaint contained causes of action for negligence, breach of contract, breach of fiduciary duty, and intentional infliction of emotional distress.

The trial court sustained a demurrer without leave to amend as to the fiduciary duty and emotional distress claims, concluding that the Crosses had failed to state facts sufficient to constitute those causes of action. The court granted summary judgment on the negligence and contract claims, finding them barred by the statute of limitations. The Crosses appeal these rulings. We reverse.

### BACKGROUND

On March 4, 1993, the Crosses filed suit against Bonded, Robert Susnow, an attorney, and Susnow's firm, alleging that the defendants had been

retained to collect on a judgment and had committed several wrongful acts in the course thereof. Susnow filed a general demurrer to the complaint, in which Bonded joined. Before the hearing on the demurrer, the Crosses filed a first amended complaint. Susnow then demurred to the first amended complaint; Bonded did not respond to the new pleading or join in Susnow's demurrer. The trial court sustained Susnow's demurrer with leave to amend. In October 1993, the Crosses filed a second amended complaint.[1]

## A. *Allegations in the Operative Complaint*

The second amended complaint alleged as follows. In May 1979, the Crosses obtained a judgment in Sacramento County Superior Court against Winston Christensen and others for $150,182.98. In September 1987, they retained Susnow to collect on the judgment. Having previously appeared in the Sacramento action in propria persona, the Crosses substituted Susnow in as their counsel of record. In June 1988, the Crosses assigned their rights in the judgment to Bonded, with the understanding that Bonded and Susnow would receive 40 percent of the amount collected and the Crosses would receive the remainder.

The second amended complaint contained four causes of action. The negligence claim alleged that Susnow had acted as the attorney for both the Crosses and Bonded. Together, Susnow and Bonded failed to preserve the Crosses' lien on the judgment debtor's (Christensen's) real property. The lien expired in approximately April 1989, when defendants renewed the judgment. At that time, the judgment (principal plus interest) totaled $244,812.22. Although defendants renewed the judgment, they failed to record a certified copy of the renewal application in the county where Christensen's property was located. (See Code Civ. Proc., § 683.180, subd. (a).)[2] In addition, defendants failed to serve Christensen with a notice of renewal of the judgment.[3] These failures caused the Crosses to lose their lien priority on Christensen's property and allowed Christensen to quitclaim the property to his wife as her sole property. Defendants concealed these failures

[1] At this point in the case, the procedural history as to Susnow and his firm takes a different path from that of Bonded. Because Susnow and his firm are not parties to this appeal, we hereafter focus on the procedural developments as to Bonded.

[2] Section 683.180, subdivision (a), states: "If a judgment lien on an interest in real property has been created pursuant to a money judgment and the judgment is renewed pursuant to this article, the duration of the judgment lien is extended until 10 years from the date of the filing of the application for renewal if, before the expiration of the judgment lien, a certified copy of the application for renewal is recorded with the county recorder of the county where the real property subject to the judgment lien is located."

[3] Section 683.160, subdivision (a), of the Code of Civil Procedure requires that such notice be given and that proof of service be filed with the court. Subdivision (b) of that statute provides: "Until proof of service is filed pursuant to subdivision (a), no writ may be issued,

from the Crosses and convinced them to give Christensen a full satisfaction of judgment in exchange for $40,000. Had defendants properly recorded and served notice of the renewal of judgment, the Crosses' lien would have been preserved, and they would have been able to satisfy the lien either in full or in an amount significantly greater than $40,000.

The second cause of action, for breach of contract, alleged that the Crosses had separate contracts, oral or implied, with Susnow and Bonded, respectively. The purpose of each contract was to pursue collection activities for the benefit of the Crosses. Defendants breached those contracts by failing to act in a manner consistent with their fiduciary duties and with the standard practice ordinarily followed by other attorneys and collection agencies.

The third cause of action, for breach of fiduciary duty, alleged that defendants had breached their fiduciary duties, as imposed by the Business and Professions Code and the common law of the State of California.

The last cause of action, for intentional infliction of emotional distress, alleged that defendants intentionally engaged in conduct which caused the Crosses to suffer extreme emotional distress.

Finally, the second amended complaint alleged that defendants had willfully concealed the facts concerning their wrongful conduct and that such concealment had tolled the running of the statute of limitations. The Crosses did not discover defendants' wrongful conduct until approximately April 1992, when they received their files from defendants.

## B. *Bonded's Demurrer*

In November 1993, Bonded demurred to the fiduciary duty and emotional distress claims (third and fourth causes of action) on the ground that they failed to state facts sufficient to constitute causes of action.

As to the fiduciary duty claim, Bonded argued that although such a duty had existed under Business and Professions Code section 6926, that statute had been repealed before the Crosses filed their lawsuit.[4] Consequently, section 6926 did not create an enforceable fiduciary relationship between the parties because the Crosses' claim had not been reduced to final judgment

---

nor may any enforcement proceedings be commenced to enforce the judgment, except to the extent that the judgment would be enforceable had it not been renewed."

[4]Former section 6926 stated in part, "The assignment by a customer to a licensee of an account for collection creates a fiduciary relationship between the customer and the licensee." This statute was one of several sections of the Collection Agency Act (former Bus. & Prof. Code, §§ 6850-6956). Section 6926 was enacted in 1963 (Stats. 1963, ch. 1814, § 63, pp.

before the date of the statute's repeal. (See *Los Angeles Unified School Dist. v. State of California* (1991) 229 Cal.App.3d 552, 556-557 [280 Cal.Rptr. 237].) As to the emotional distress claim, Bonded argued that the lack of a fiduciary relationship and the lack of outrageous conduct rendered the cause of action defective. The trial court agreed with these arguments and sustained the demurrer without leave to amend as to both claims.

The Crosses sought reconsideration of the ruling on the demurrer. They contended that, in dismissing the fiduciary duty claim, the trial court ignored the existence of a fiduciary duty imposed by common law. This duty, they asserted, was not affected by the enactment or repeal of Business and Professions Code section 6926. The trial court rejected this contention, stating that "there is no fiduciary duty owing to the Plaintiffs from Defendant Bonded."

## C. *Summary Judgment*

In March 1994, Bonded moved for summary judgment as to the remaining claims, for negligence and breach of contract (first and second causes of action), on the ground that they were barred by the two-year statute of limitations contained in section 339 of the Code of Civil Procedure.[5] The trial court found as an undisputed fact that Mr. Cross was "concerned about the renewal of the subject [judgment] and lien priority in January 1991." The court concluded that the two-year period commenced to run at that time. Thus, the negligence and contract claims, filed in March 1993, were time-barred.

Judgment was entered in favor of Bonded on July 22, 1994. The Crosses filed a timely appeal from the judgment, seeking review of the rulings on the demurrer as well as the summary judgment.

## DISCUSSION

In sustaining the demurrer, the trial court concluded that there was no fiduciary relationship between Bonded and the Crosses. Because the resolution of this issue affects the disposition of the rest of the appeal, we begin by examining whether Bonded owed a fiduciary duty to the Crosses. We conclude that such a duty existed.

---

3733-3734) and was repealed, together with the entire act, as of June 30, 1992 (Stats. 1978, ch. 772, §§ 1, 4, pp. 2403, 2404; Stats. 1988, ch. 338, § 1, p. 1645).

[5]Section 339 establishes a two-year limitations period for "[a]n action upon a contract, obligation or liability not founded upon an instrument of writing." (Code Civ. Proc., § 339, subd. 1.)

## A. *Breach of Fiduciary Duty*

■ In reviewing the ruling on a demurrer, "we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed.' . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. . . . When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. . . . And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. . . . The burden of proving such reasonable possibility is squarely on the plaintiff. . . ." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58], citations omitted.)

■ We agree with the trial court's conclusion that the fiduciary relationship created by former Business and Professions Code section 6926 did not provide a basis for the Crosses' third cause of action, for breach of fiduciary duty. Section 6926 was repealed operative June 30, 1992, over eight months before the Crosses filed suit. It is well settled that when a cause of action rests upon a statute, " 'the repeal of the statute destroys the right unless the right has been reduced to final judgment or unless the repealing statute contains a saving clause protecting the right in a pending litigation.' " (*Los Angeles Unified School Dist.* v. *State of California, supra,* 229 Cal.App.3d at p. 557.) Here, there was no saving clause, nor had the Crosses reduced their claim to final judgment before the statute was repealed.

Nevertheless, despite the repeal of Business and Professions Code section 6926, the Crosses may rely on the common law to the extent it created a fiduciary duty between the parties. ■ As our Supreme Court has stated: "It is . . . a general rule . . . that a cause of action or remedy dependent on a statute falls with a repeal of the statute, even after the action thereon is pending, in the absence of a saving clause in the repealing statute. . . . The justification for this rule is that all statutory remedies are pursued with full realization that the Legislature may abolish the right to recover at any time. . . . This rule only applies when the right in question is a statutory right and does not apply to an existing right of action which has accrued to a person under the rules of the common law, or by virtue of a statute codifying the common law. In such a case, it is generally stated that the cause of action is a vested property right which may not be impaired by legislation. In other words, the repeal of such a statute or of such a right . . .

should not be construed to affect existing causes of action." (*Callet* v. *Alioto* (1930) 210 Cal. 65, 67-68 [290 P. 438], citations omitted.) In short, the repeal of a statute affects a cause of action based solely upon the statute; it does not affect a claim that exists at common law. (*Los Angeles Unified School Dist.* v. *State of California, supra,* 229 Cal.App.3d at p. 557.)[6]

▉ Over 60 years ago, the Court of Appeal recognized that the relationship between a collection agency and a judgment creditor is fiduciary in nature. In *Elam* v. *Arzaga* (1932) 122 Cal.App. 742 [10 P.2d 805], the creditor, Mr. Lopez, assigned a debt to a collection agency for satisfaction, agreeing to pay the agency a commission on the amount collected. The agency and its attorney collected on the debt but did not so inform Lopez, telling him instead that it was unclear whether he " 'would get anything.' " (*Id.* at p. 744.) Litigation ensued over title to the property seized by the agency pursuant to Lopez's judgment. In reviewing a trial court decision adverse to the collection agency, the Court of Appeal stated: "It becomes important to consider the relationship between Lopez and the parties connected with the collection agency arising out of his original transaction with said agency. We will assume . . . that the original instrument signed by Lopez constituted a valid assignment of his claim for the purpose of collection. The agency could prosecute the justice court action in its own name as the holder of the legal title to the claim, but the equitable interest remained in Lopez. . . . Upon assignment for the purpose of collection the assignee has been referred to as the trustee or agent of the assignor. . . . Whether regarded as the agent or the trustee of the assignor the obligations of the assignee are practically the same. . . . [Counsel for the collection agency] insists that he was not the attorney for Lopez, but was attorney for the collection agency. In our opinion this is immaterial. *A fiduciary relationship existed between Lopez and all those connected with the collection agency in the prosecution of the claim* and [the attorney] and his associates were under [an] obligation to act in the highest good faith by reason of such relationship." (*Id.* at p. 746, citations omitted, italics added.)

Ten years after *Elam,* the Supreme Court recognized that "[a]n assignment for collection vests legal title in the assignee which is sufficient to enable him to maintain an action in his own name, but the assignor retains the equitable interest in the thing assigned. . . . Such an assignee has been referred to as the trustee or agent of the assignor . . . , and a fiduciary

---

[6]In repealing Business and Professions Code section 6926 (and the Collection Agency Act), the Legislature did not express any intention to abrogate the preexisting common law duties of a collection agency. The Legislature simply repealed a collection agency's *statutory* duties and the act's enforcement mechanisms. (See, e.g., Stats. 1978, ch. 772, § 4.5, p. 2405.)

relationship exists between them. . . ." (*Harrison* v. *Adams* (1942) 20 Cal.2d 646, 650 [128 P.2d 9], citations omitted.)[7]

Finally, as stated in the Restatement Second of Agency: "In fact, most of the persons known as agents, that is, brokers, factors, attorneys, *collection agencies*, and selling agencies are independent contractors as the term is used in the Restatement . . . since they are contractors but, although employed to perform services, are not subject to the control or right to control of the principal with respect to their physical conduct in the performance of the services. However, they fall within the category of agents. *They are fiduciaries; they owe to the principal the basic obligations of agency: loyalty and obedience.*" (Rest.2d Agency, § 14 N, com. a, italics added, quoted with approval in *Micromanipulator Co., Inc.* v. *Bough* (5th Cir. 1985) 779 F.2d 255, 257, fn. 5.)

Because the trial court erred in concluding that the common law did not create a fiduciary relationship between the parties, the demurrer should have been overruled as to the third cause of action.

B. *Negligence and Breach of Contract*

■ The trial court disposed of the negligence and contract claims by way of summary judgment, finding that they were barred by the statute of limitations (Code Civ. Proc., § 339, subd. 1).

Summary judgment is appropriate if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

■ "A defendant seeking summary judgment has met the burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action cannot be established [or that there is a complete defense to that cause of action]. . . . Once the defendant's burden is met, the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action. . . . In reviewing the propriety of a summary judgment, the appellate court independently reviews the record that was before the trial court. . . . We must determine whether the facts as shown by the parties give rise to a triable issue of material fact. . . . In making this determination, the moving party's affidavits are strictly construed while those of the opposing party are liberally construed." (*Hanooka*

---

[7]In fairness to the trial court, we note that the parties did not bring *Elam* or *Harrison* to its attention. In fact, those cases were not even mentioned on appeal until the Crosses' *reply* brief. Of course, while we typically decline to consider *issues* raised for the first time in a reply brief, no such rule governs the *citation of authorities* in support of an argument that has been made at the trial and appellate levels.

v. *Pivko* (1994) 22 Cal.App.4th 1553, 1558 [28 Cal.Rptr.2d 70], citations omitted; see also Code Civ. Proc., § 437c, subd. (o)(2).) We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence. (*Kelleher* v. *Empresa Hondurena de Vapores, S.A.* (1976) 57 Cal.App.3d 52, 56 [129 Cal.Rptr. 32].) In other words, the facts alleged in the evidence of the party opposing summary judgment (and the reasonable inferences drawn therefrom) must be accepted as true. (*Zeilman* v. *County of Kern* (1985) 168 Cal.App.3d 1174, 1179, fn. 3 [214 Cal.Rptr. 746].)

 The evidence on the summary judgment motion established the following. In May 1979, the Crosses obtained a judgment in Sacramento County Superior Court against Christensen, among others, in the sum of $150,182.98. In August 1987, an entity known as Von Raff International Corporation (Von Raff), acting on behalf of the Crosses, sent the judgment to Bonded for collection.[8] In September 1987, the Crosses substituted Susnow (in place of themselves) as counsel of record in the Sacramento action. Several months later, in June 1988, Mr. Cross executed an assignment of judgment, which transferred to Bonded all of the Crosses' "right, title and interest" therein.

In April 1989, Bonded and Susnow filed an application for renewal of the Crosses' judgment. However, they did not record a certified copy of the application with the appropriate county recorder, as required by Code of Civil Procedure section 683.180, subdivision (a). (See fn. 2, *ante* [quoting statute].) Nor did they serve notice of renewal of the judgment on Christensen, as required by Code of Civil Procedure section 683.160, subdivision (a). (See fn. 3, *ante* [discussing statute].) These omissions caused the existing lien on Christensen's real property to lapse, and, in January 1990, he quitclaimed the property to his wife as her sole property. Bonded and Susnow did not inform the Crosses that there was no longer a lien on Christensen's property or that Christensen had transferred the property to his wife.

On several occasions before January 1991, Mr. Cross contacted Bonded to inquire about the status of the collection matter. Bonded would not give him any information and told him to communicate with it through Von Raff. As a result, Von Raff suggested that its attorney, Kirk Rimmer, attempt to obtain a status report from Bonded and Susnow. This arrangement was acceptable to the parties.

On January 11, 1991, Rimmer wrote Bonded and Susnow, asking, among other things, whether the notice of renewal of the judgment had been served

---

[8]The parties do not explain how Von Raff became involved in this matter, the nature of its business, or its relationship to anyone.

on Christensen and whether the application to renew the judgment had been recorded. In a January 22, 1991, letter, Bonded responded that copies of the application and notice were attached thereto and that the application had in fact been recorded. After reviewing the material attached to Bonded's letter, Rimmer wrote back (on January 30, 1991), indicating that Bonded had not provided all of the requested information.[9] Apparently receiving no response from Bonded, Rimmer wrote Susnow on February 27, 1991, enclosing his prior letters and asking for a satisfactory response to his inquiries about the status of the collection efforts.

On March 11, 1991, Von Raff wrote Bonded about the Cross matter, stating, "we hereby request on behalf of our client, Mr. Billy Cross, that this file be canceled and returned. [¶] Please forward all paperwork pertaining to this file, along with an acknowledgment of cancellation within 10 days." Bonded replied (by letter dated March 15, 1991) that "our attorney [Susnow] is in the middle of discovery and our efforts are not exhausted, therefore your request is denied." In a similar vein, Rimmer wrote Susnow on April 1, 1991, demanding that Bonded withdraw from the Cross account and that the complete file be returned to Von Raff and Mr. Cross. Still, the file was not returned.[10]

Instead, Bonded persuaded the Crosses to settle with Christensen for $40,000. Bonded did not tell the Crosses about the true status of the judgment lien (i.e., it had expired) or about Christensen's transfer of the property to his wife.[11] Bonded simply told the Crosses that the settlement was a "good deal, the best deal [they] could get." In September 1991, the

---

[9]For instance, Rimmer had requested that he be sent a copy of the proof of service on the renewal application. Rimmer's January 30 letter noted that Bonded had not done so.

[10]Former Business and Professions Code section 6926.3, subdivision (a), which was operative at the time of the subject correspondence, stated: "In the absence of any written agreement, any claim may be withdrawn, without charge, after six months from date of assignment on 60 days' prior written demand, provided the claim is not in the process of collection at the time of demand. A claim is deemed to be in the process of collection within the meaning of this rule if any of the following apply: [¶] (1) Within six months immediately preceding the demand for withdrawal a payment has been received thereon by either the customer or licensee. [¶] (2) The licensee has obtained a written promise of payment which is legally enforceable. [¶] (3) Suit filed thereon by or on behalf of the licensee is pending or has been reduced to judgment. [¶] (4) The claim has been forwarded out of state for collection. [¶] (5) Payment is assured because of an ascertained future event, such as payment of dividends in a bankruptcy proceeding, probate of an estate, assignment for benefit of creditors, or similar events, provided the licensee has diligently complied with all requirements necessary to insure payment of claim upon the happening of that event."

In his declaration, Rimmer disputed Bonded's reason for not returning the file; according to him, Bonded was not engaged in any discovery. Moreover, Bonded has not argued that section 6926.3 of the Business and Professions Code permitted it to retain the Crosses' file despite their demands that it be returned.

[11]In November 1990, the Christensen property had been appraised at over $480,000.

Crosses gave Christensen an acknowledgment that he had satisfied the judgment in full by paying the $40,000.

Five months later, the Crosses had yet to receive their file from Bonded. In February 1992, Rimmer again wrote Susnow, stating, "[w]e have repeatedly requested the return of the [Crosses'] files, all to no avail." This time, Rimmer threatened to file suit against Bonded if the files were not returned. Eventually, in April 1992, Bonded sent the files to Rimmer. After reviewing the files, Rimmer and the Crosses learned for the first time that the lien on the Christensen property had expired in 1989 and that Christensen had transferred the property to his wife. Various documents in the files indicated that Bonded had been aware of this information before the Crosses settled with Christensen for $40,000.[12] Further, Bonded clearly knew in 1989 that it had not recorded the application for renewal of judgment with the county recorder.

In moving for summary judgment, Bonded established as an undisputed fact that Rimmer and Mr. Cross were "concerned" in January 1991 (and perhaps earlier) with the status of the judgment—whether it had been timely renewed and whether the lien on Christensen's property had been preserved. It does not follow, however, that the two-year statute of limitations (Code Civ. Proc, § 339, subd. 1) commenced to run at that time.[13]

■ In general, "[c]ivil actions, without exception, can only be commenced within the periods prescribed [by the statutes of limitations], after the cause of action shall have accrued . . . ." (Code Civ. Proc., § 312.) A cause of action ordinarily accrues when, under the substantive law, the wrongful act is done and liability arises, i.e., upon the occurrence of the last fact essential to the cause of action. (*Saliter* v. *Pierce Brothers Mortuaries* (1978) 81 Cal.App.3d 292, 296 [146 Cal.Rptr. 271]; 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 351, p. 380.) "Although sometimes harsh, the fact that plaintiff is neither aware of his cause of action nor the identity of a wrongdoer will not toll the statute." (*Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398, 406 [163 Cal.Rptr. 711].) However, under the "discovery rule," the statute of limitations does not begin to run until the plaintiff either (1) actually discovers the injury and its cause or (2) could have discovered the injury and its cause through the exercise of reasonable diligence. (*Leaf* v.

---

[12]By way of example, the files contained a February 1991 declaration from Susnow (apparently used in connection with a judgment debtor exam) in which he stated that "judgment debtor [Mr. Christensen] conveyed all of his right, title and interest in the real property . . . to said examinee [Mrs. Christensen]."

[13]The Crosses contend that the trial court should have applied the *three*-year limitations period contained in Code of Civil Procedure section 338, subdivision (d). Given our analysis of the limitations issue, we need not reach this question.

*City of San Mateo, supra,* 104 Cal.App.3d at p. 407; accord, *Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109 [245 Cal.Rptr. 658, 751 P.2d 923].)

 In this case, we have no doubt that the discovery rule applies to the Crosses' negligence and breach of contract claims. (See *Leaf* v. *City of San Mateo, supra,* 104 Cal.App.3d at pp. 407-408; *April Enterprises, Inc.* v. *KTTV* (1983) 147 Cal.App.3d 805, 826-833 [195 Cal.Rptr. 421].) Nonetheless, Bonded points out that, even under the discovery rule, "the limitations period begins once the plaintiff ' " 'has notice or information of circumstances to put a reasonable person on inquiry.' " ' " (*Jolly* v. *Eli Lilly & Co., supra,* 44 Cal.3d at pp. 1110-1111, italics omitted.) According to Bonded, the Crosses had such notice no later than January 1991, such that the limitations period expired in January 1993, two months before suit was filed. We disagree.

Bonded's argument overlooks the principle that "[a]s fiduciaries it was the duty of defendants to make a full and fair disclosure to plaintiff[s] of all facts which materially affected [their] rights and interests. This principle has been applied and expressed in one form or another in several . . . decisions dealing specifically with the question of fraudulent concealment of a cause of action in its relation to the statute of limitation[s]." (*Bowman* v. *McPheeters* (1947) 77 Cal.App.2d 795, 800 [176 P.2d 745].) "[T]he breach of a duty to disclose known facts with the intention to and which does hinder commencement of an action until the action would be outlawed, is a fraud practiced upon the plaintiff which in conscience estops the defendant's reliance on the statute of limitations." (*Pashley* v. *Pacific Elec. Ry. Co.* (1944) 25 Cal.2d 226, 232 [153 P.2d 325].) "Where there is a duty to disclose, the disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud sufficient to entitle the party injured thereby to an action." (*Id.* at p. 235.) "Where a fiduciary relationship exists the [plaintiffs'] usual duty of diligence to discover facts does not exist." (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 598 [83 Cal.Rptr. 418, 463 P.2d 770].) Put simply, if the "delay in commencing an action is induced by the conduct of the defendant, he cannot avail himself of the defense of the statute [of limitations]." (*Gaglione* v. *Coolidge* (1955) 134 Cal.App.2d 518, 527 [286 P.2d 568].)[14]

 Here, beginning in January 1991, the Crosses and Rimmer *attempted* to learn about the true status of Bonded's collection efforts. In

---

[14]In attempting to defeat the Crosses' estoppel argument, Bonded contends that they did not sufficiently plead fraud in the second amended complaint. We reject this contention. The second amended complaint alleged that defendants had willfully concealed facts concerning their wrongful conduct and that such concealment tolled the statute of limitations. Those allegations were sufficient. Moreover, a fiduciary relationship existed between the parties. As stated by the Supreme Court: "Cases in which the defendant stands in a fiduciary relationship to the plaintiff are frequently treated as if they involved fraudulent concealment of the cause

response, Bonded inaccurately stated that a certified copy of the application for renewal of the judgment had been recorded. Further, aside from that affirmative misstatement, Bonded did not inform the Crosses or Rimmer about the expiration of the lien on Christensen's property or of Christensen's transfer of the property to his wife. Finally, despite repeated requests, Bonded refused to return the files to the Crosses until seven months after the matter was closed. Had Bonded returned the files at an earlier time, the Crosses would have discovered its alleged wrongful conduct before April 1992.

In light of the fiduciary relationship between the parties, Bonded should have informed the Crosses in a timely manner about the expiration of the lien and the transfer of the Christensen property, i.e., before the Crosses agreed to give Christensen a full satisfaction of the judgment for significantly less than its value. Further, regardless of any fiduciary duty, Bonded should not have affirmatively misrepresented, as it did, that a certified copy of the application to renew the judgment had been recorded with the county recorder. These failures to disclose the ongoing status of the collection matter precluded the Crosses from discovering Bonded's wrongful conduct —from learning that they had a cause of action. In these circumstances, "[w]e see no reason to commence the running of the statute of limitations when plaintiffs, at the outset, made reasonable, but unsuccessful, efforts to [determine whether defendant had committed any wrongdoing]." (*Leaf* v. *City of San Mateo, supra,* 104 Cal.App.3d at p. 408.)

In closing, it is not necessary that we determine precisely when the statute of limitations began to run. It is sufficient that the statute did not begin to run until some time after the end of March 1991, *less than* two years before the Crosses filed suit.[15] Accordingly, the trial court should not have granted summary judgment on the negligence and contract claims based on the statute of limitations.

## C. *Intentional Infliction of Emotional Distress*

■ As stated, the trial court sustained Bonded's demurrer without leave to amend as to the claim for intentional infliction of emotional distress. In

of action by the defendant. The theory is that although the defendant makes no active misrepresentation, this element is supplied by an affirmative obligation to make full disclosure, and the non-disclosure itself is "fraud." ' . . . There is no need to resort to this fiction, however, for the very existence of a fiduciary relationship obviated the necessity of plaintiff's pleading fraud." (*Amen* v. *Merced County Title Co.* (1962) 58 Cal.2d 528, 534 [25 Cal.Rptr. 65, 375 P.2d 33], citations omitted.)

[15]The Crosses contend that the limitations period did not commence to run until either (1) April 1992, when they actually learned of Bonded's alleged misconduct by reviewing the collection files or (2) September 1991, when they gave Christensen a full satisfaction of judgment based on false and incomplete information provided by Bonded.

seeking the dismissal of this claim, Bonded argued that there was no fiduciary relationship between the parties and that its conduct, as alleged, was not sufficiently outrageous. Because we have already decided that a fiduciary relationship existed in this case, we turn to the question of whether Bonded's alleged conduct was outrageous.

■ "The elements of a cause of action for intentional infliction of emotional distress are (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and proximate causation of the emotional distress. . . . [¶] . . . [¶] Conduct is extreme and outrageous when it ' " 'exceeds all bounds [of decency] usually tolerated by a decent society, [and is] of a nature which is especially calculated to cause, and does cause, mental distress. . . .' " ' . . . Liability 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' " (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1120, 1122 [252 Cal.Rptr. 122, 762 P.2d 46], cert. den. 490 U.S. 1084 [104 L.Ed.2d 670, 109 S.Ct. 2110], citations omitted, bracketed material added in *Molko*.)

Further, "[t]he extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." (Rest.2d Torts, § 46, com. e; accord, *Molko* v. *Holy Spirit Assn.*, *supra*, 46 Cal.3d at p. 1122; *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 155, fn. 7 [233 Cal.Rptr. 308, 729 P.2d 743].) " ' "Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." ' " (*Molko* v. *Holy Spirit Assn.*, *supra*, 46 Cal.3d at p. 1123.)

■ Given the fiduciary nature of the parties' relationship, we cannot say that the Crosses failed to allege extreme and outrageous conduct as a matter of law. It may well be that Bonded's failure to preserve the lien on Christensen's property was the result of negligence (instead of intentional misconduct). Nevertheless, the second amended complaint alleged that Bonded's remaining actions—affirmatively misrepresenting that the renewal application had been recorded, failing to inform the Crosses that Christensen had transferred the property to his wife, and persuading the Crosses to release Christensen's debt by accepting $40,000 on a judgment worth over

$250,000—were intentional and done with the foreseeable consequence that the Crosses would suffer severe emotional distress once they discovered the truth.[16]

We conclude that reasonable minds could differ as to whether Bonded's conduct was sufficiently extreme and outrageous. Arguably, Bonded abused a position which gave it power to adversely affect the Crosses' interests. (See Rest.2d Torts, § 46, com. e; *Molko* v. *Holy Spirit Assn.*, *supra*, 46 Cal.3d at p. 1122; *Cole* v. *Fair Oaks Fire Protection Dist.*, *supra*, 43 Cal.3d 148, 155, fn. 7.) Accordingly, the trial court should have overruled the demurrer to the claim for intentional infliction of emotional distress.

## DISPOSITION

The orders sustaining the demurrer and denying reconsideration are reversed to the extent they dismissed the causes of action for breach of fiduciary duty and intentional infliction of emotional distress. The summary judgment as to the remaining causes of action is also reversed. Appellants are entitled to costs on appeal.

Spencer, P. J., and Ortega, J., concurred.

---

[16]On appeal, the Crosses contend that, had they known the truth before September 1991, they could have taken steps to set aside Christensen's fraudulent conveyance of the property to his wife. Then they could have satisfied the judgment (in full or substantially) through the sale of the property instead of releasing Christensen's debt for a fraction of its value.