Filed 10/31/13   Cunningham v. Magidow CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| KATHLEEN CUNNINGHAM, | B239120 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. YC060725) |
| v. | |
| NORMAN MAGIDOW et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Dudley W. Gray II, Judge.  Reversed in part with directions.

Spierer, Woodward, Corbalis & Goldberg and Stephen B. Goldberg for Plaintiff and Appellant.

Law Office of Shula Roth-Barash, Shula Roth-Barash; Greines, Martin, Stein & Richland LLP, Cynthia E. Tobisman, and Sheila A. Wirkus for Defendants and Respondents.

_____

Kathleen Cunningham brought this shareholder derivative action on behalf of Royal Airline Linen, Inc. (Royal) against Norman Magidow and Anthony Griffin for breach of fiduciary duty and usurpation of corporate opportunity. The superior court granted summary adjudication in favor of defendants on all claims but one. The surviving claim proceeded to a bench trial, at which Cunningham prevailed. Cunningham now appeals from the judgment, challenging the summary adjudication rulings against her. We reverse.

## BACKGROUND

Royal is a provider of linen and laundry services to airlines and hotels. Griffin has been the president of Royal since April 2004, but he is not a shareholder or director. Magidow and Cunningham are Royal's directors, and each of them owns half of Royal's stock. Magidow is also Royal's chief executive officer, and Cunningham has been a vice president of the corporation since 2004.

On September 9, 2009, Cunningham filed this shareholder derivative action. The operative second amended complaint alleges claims against Magidow and Griffin for breach of fiduciary duty and usurpation of corporate opportunity.[1] Cunningham alleged the same two grounds for both claims. First, she alleged that Magidow arranged for Royal to purchase plastic film at inflated prices from Worldwide Plastics, Inc., which Magidow owned, but Magidow failed to disclose his conflict of interest. Second, Cunningham further alleged that Magidow and Griffin created a separate entity, Premier Linen Service, Inc. (Premier),[2] to operate as a middleman between Royal and its hotel clients, and that Magidow and Griffin secretly used this arrangement to profit personally from Royal's hotel laundry business at Royal's and Cunningham's expense.

---

[1]     Cunningham also alleged a claim for conversion. The superior court resolved that claim against Cunningham on summary adjudication, and Cunningham raises no arguments concerning that claim on appeal. We therefore deem the conversion claim abandoned.

[2]     It appears that Premier was originally a limited liability company but was later incorporated.

2

Magidow and Griffin moved separately for summary judgment or, in the alternative, summary adjudication. They argued that the undisputed facts showed both that all claims against them were untimely and that their conduct was not tortious and was protected by the business judgment rule. Cunningham opposed both motions, and the parties filed written objections to each other's evidence.

Defendants argued as follows on the merits of the claims concerning Premier: In late 2004 and early 2005, Royal's airline laundry business (which was at that time Royal's only business) was suffering as a result of a dispute with another airline laundry service. In order to generate a new revenue source, Magidow and Griffin explored the possibility of having Royal provide laundry service to hotels. They contacted Jim Sinatra, who was previously the territory manager of a company that had supplied chemicals and detergents to Royal. Sinatra was in the process of starting his own laundry chemical distribution business, and, in the words of Griffin's declaration, he "had developed a robust network that included key contacts in several hotel companies." Magidow and Griffin consequently proposed to Sinatra that he "act[] as a broker" to secure hotel industry clients for Royal, and Royal "would act as his exclusive subcontractor in providing hotel laundry services." To that end, Magidow instructed Griffin to assist Sinatra in creating and running Premier, which performed the envisioned role as broker. According to Magidow and Griffin, Sinatra is the sole owner and operator of Premier. Magidow and Griffin categorically deny that they have ever had any ownership interest in Premier or have received any remuneration from Premier or Sinatra. Rather, Magidow and Griffin helped to create and run Premier, and had Royal pay for Premier's services, because "Sinatra had substantial hotel business contacts but not the required laundry facilities" and "Royal had the required laundry facilities but not the hotel business contacts."

The evidence that Cunningham introduced in opposition to defendants' motions included the following: When Sinatra was asked at his deposition whether Premier had ever done business with Worldwide Plastics (i.e., Magidow's company), he answered "No," and when asked whether Premier's business utilizes plastics in any way, he again

3

answered "No." Sinatra purported to know virtually nothing about Worldwide Plastics— "I've heard of it, but I don't know what they do. Common sense tells me they sell plastics." But Cunningham found Premier's checkbook in the safe in Griffin's office, and it contained stubs for checks written from Premier to Worldwide Plastics. In addition, Cunningham's declaration states that Worldwide Plastics' bank records show that the checks were deposited in November 2007, but Magidow's declaration states that Worldwide Plastics "ceased active operations" in 2005.

The superior court denied summary adjudication as to the claims concerning Worldwide Plastics. But the court granted the motions as to the claims concerning Premier, agreeing with both of the grounds urged by defendants. The court overruled Magidow's evidentiary objections to the paragraph of Cunningham's declaration concerning the checks Premier wrote to Worldwide Plastics (Griffin did not object to that paragraph), but the court sustained defendants' objections to copies of the check stubs themselves.[3] Defendants did not object to the transcript of Sinatra's deposition.

The claim concerning Worldwide Plastics, which involved only Magidow as defendant, proceeded to a bench trial. The court found in favor of Cunningham, concluding that Magidow "didn't disclose" his conflict of interest to Cunningham and "always substantially marked up the prices he charged [Royal]." The court also found that Magidow was not a credible witness and that his statements were "repeatedly impeached" and "proven to be false." The court awarded $226,000 in compensatory damages and an additional $226,000 in punitive damages, for a total award (exclusive of interest and costs) of $452,000.

The court entered judgment on all claims as to all defendants on November 30, 2011. Cunningham timely appealed from the judgment, seeking to overturn the rulings on the summary adjudication motions.

---

[3] Because it is not necessary to our analysis, we express no opinion on the correctness of the court's evidentiary ruling excluding the check stubs.

4

STANDARD OF REVIEW

We review the trial court's ruling on a motion for summary adjudication de novo. (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972.)

DISCUSSION

Cunningham argues that the superior court erred by concluding that there were no disputed issues of material fact on the claims concerning Premier. We agree.

According to Magidow and Griffin, they helped create and run and retained the services of Premier because Royal needed to expand into the hotel laundry business but lacked the necessary business contacts, and Premier's sole owner and operator, Sinatra, had such contacts. As defendants say at the start of their brief on appeal, "No one likes to pay the middleman. But sometimes it is necessary." They thus portray Royal's dealings with Premier as a business necessity, or at least a matter of business judgment, and one that ultimately benefited Royal by bringing in lucrative hotel industry clients.

Cunningham's evidence creates factual disputes concerning defendants' version of events and would allow a jury to infer that Magidow and Griffin were using Premier to profit personally from the hotel industry at Royal's expense. According to Magidow and Griffin, Sinatra was and is the sole owner and operator of Premier. Sinatra testified unequivocally that Premier has never done business with Worldwide Plastics and that Premier's business does not utilize plastics in any way. But Cunningham introduced evidence that Premier repeatedly wrote checks to Worldwide Plastics, the company that Magidow owned and was using to overcharge Royal for plastic film. And Cunningham's evidence showed that Premier made those payments to Worldwide Plastics in November 2007, even though Magidow's declaration stated that Worldwide Plastics "ceased active operations" in 2005. Given that (1) all of the evidence in the record indicates that Premier had no use for Worldwide Plastics' products, (2) Magidow and Griffin played central roles in creating and running Premier and having Royal pay for Premier's services, and (3) Magidow was using Worldwide Plastics to profit personally at Royal's expense, Premier's payments to Worldwide Plastics tend to show that Magidow and

5

Griffin created Premier as a vehicle to funnel money away from Royal for their personal benefit.

Defendants' arguments concerning these pieces of evidence are not persuasive. As regards the checks from Premier to Worldwide Plastics, defendants argue only that they do not show that defendants owned Premier. That is true but irrelevant. The checks show that Premier was paying money to Worldwide Plastics even though Premier's sole owner and operator testified under oath that Premier had never done business with Worldwide Plastics and had no use for plastics anyway. Given defendants' central role in creating, running, and retaining Premier, and given Sinatra's testimony concerning Worldwide Plastics (which was described in a paragraph of Cunningham's declaration that was admitted by the superior court), the transfers of funds from Premier to Worldwide Plastics tend to show that defendants were using Premier to benefit themselves at Royal's expense.

In light of the evidence that defendants' dealings with Premier on behalf of Royal were self-interested, defendants' arguments concerning the business judgment rule lack merit. The evidence creates disputed issues of fact as to whether defendants' conduct was self-interested, and the business judgment rule does not shield self-dealing. (See, e.g., *Kruss v. Booth* (2010) 185 Cal.App.4th 699, 728.)

Finally, as regards the statute of limitations, Cunningham argues that because defendants owed her a fiduciary duty and deliberately concealed facts from her, thereby delaying her acquisition of the information needed to file suit, they are barred from relying on the statute of limitations. Again, we agree.

"'[T]he breach of a duty to disclose known facts with the intention to and which does hinder commencement of an action until the action would be outlawed, is a fraud practiced upon the plaintiff which in conscience estops the defendant's reliance on the statute of limitations.' [Citation.] 'Where there is a duty to disclose, the disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud sufficient to entitle the party injured thereby to an action.' [Citation.] 'Where a fiduciary relationship exists the [plaintiffs'] usual duty of diligence to discover facts does

6

not exist.' [Citation.] Put simply, if the 'delay in commencing an action is induced by the conduct of the defendant, he cannot avail himself of the defense of the statute [of limitations].' [Citation.]" (*Cross v. Bonded Adjustment Bureau* (1996) 48 Cal.App.4th 266, 281.)

Defendants' arguments to the contrary are not persuasive. First, defendants argue that there is no evidence of a breach of fiduciary duty—"no interested director transaction or other conflict of interest" and no evidence that "a fiduciary deliberately concealed facts from a principal." For the reasons already explained, we disagree. Second, defendants argue that Cunningham, as a director of Royal, owed a fiduciary duty to the corporation and consequently had a duty of reasonable inquiry. Defendants do not, however, cite any authority for the proposition that Cunningham's duty of reasonable inquiry excuses their own deliberate concealment of their own self-dealing (if that is what they did) so as to make a statute of limitations defense available to them. In any event, the record contains evidence that Cunningham did make reasonable inquiries on the basis of her suspicions but was thwarted by defendants' concealment. For example, in 2006, Cunningham suspected that "something was going on" with Worldwide Plastics, and she brought her concerns to Griffin, whom she did not yet suspect of wrongdoing. He reassured her ("[Griffin] kind of didn't make any big issue out of it. He blew it off.") and she consequently "kind of thought everything was okay," "[t]hat it was just my being suspicious or something."

For all of the foregoing reasons, defendants' summary adjudication motions should have been denied as to the claims concerning Premier. We therefore reverse the judgment insofar as it is based on the rulings granting summary adjudication on the claims concerning Premier.

7

DISPOSITION

The judgment is reversed insofar as it is based on the superior court's rulings granting summary adjudication as to the claims concerning Premier. The rulings granting summary adjudication as to those claims are vacated, the superior court is directed to enter a new and different order denying summary adjudication as to those claims, and the matter is remanded for further proceedings consistent with this opinion. Cunningham shall recover her costs of appeal.

NOT TO BE PUBLISHED.

ROTHSCHILD, J.

We concur:


MALLANO, P. J.


CHANEY, J.

8