Fred J. BROOKS, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. C–94–0714 DLJ.

United States District Court,
N.D. California.

July 28, 1998.

**614**

Michael S. Brooks, Jr., Crescent City, CA, pro se.

Paul Fisher–Brooks, Crescent City, CA, pro se.

Rebecca R. Brooks, Crescent City, CA, pro se.

Fred J. Brooks, Crescent City, CA, pro se.

Michael S. Brooks, Sr., Crescent City, CA, pro se.

Susan L. Kamlet, U.S. Attorney's Office, Oakland, CA, for U.S.

## JUDGMENT

JENSEN, District Judge.

Pursuant to this Court's Orders of May 16, 1995 and July 28, 1997, the Court hereby enters judgment in favor of defendant UNITED STATES OF AMERICA and against plaintiffs FRED J. BROOKS, MICHAEL S. BROOKS, Sr., MICHAEL S. BROOKS, Jr., PAUL FISHER–BROOKS, and REBECCA R. BROOKS.

IT IS SO ADJUDGED.

## ORDER

On July 16, 1997, the Court heard arguments on defendant's motion for summary judgment and on plaintiffs' motion for entry of default judgment against Defendant Bruce Babbitt. Plaintiffs Fred J. Brooks and Michael S. Brooks, Sr. appeared pro se and Assistant United States Attorney Susan Kamlet appeared on behalf of defendant. Having considered the arguments of counsel, the papers submitted, the applicable law, and the record in this case, the Court hereby GRANTS defendant's motion for summary judgment and DENIES plaintiff's motion for entry of default judgment.

## I. BACKGROUND

### A. *Factual Background and Procedural History*

Plaintiff Michael S. Brooks, Sr., ("Brooks") his father Fred Brooks and his children Michael S. Brooks, Jr., Paul Fisher–Brooks, and Rebecca R. Brooks bring this action against the United States of America, Secretary of Interior Bruce Babbitt, and Forest Rangers Thomas Crockett and John Farley.

The undisputed facts are as follows:

On Saturday, August 28, 1993, plaintiffs were camping in the Redwood National Park in a campground known as "Orick Beach" or "Freshwater Spit" in Humbolt County, California. Brooks brought his two-year-old Rottweiler dog, Cujo. After setting up camp the dog was told to lay down next to one of the tents.

The dog, Cujo, has attended sixteen weeks of obedience school and received good marks. Cujo has not been trained as an attack or home defense dog.

Brooks and his father state that they were having a discussion with their backs turned to Cujo, about ten feet from the spot Cujo had been told to lay down. Defendant Thomas Crockett, a park ranger on duty, states that he approached the campsite to investigate an apparent ongoing argument between Brooks and his father.

Crockett states that when he was about ten feet from the tent where Cujo had been left, Cujo came from around the tent and started at him. Officer Crockett claims that the dog was coming toward him at a fast trot, with its mouth open, and that the dog growled when it was a couple of feet from him. At this point Crockett shot the dog twice, wounding it.

Upon hearing the shooting, Brooks immediately rushed over to his dog, then about ten feet from defendant Crockett. As Cujo was off his leash, Brooks put his hand in Cujo's collar in order to gain control of him. He ordered Cujo to sit and stay, which Cujo did. Defendant Crockett ordered Brooks to get away from the dog. Brooks refused. Plain-

tiff told defendant that the dog was his, that it was good with children, and that it would obey him. The parties dispute whether defendant Crockett pointed his firearm at plaintiffs and Cujo after Brooks arrived at the dog's side. They also dispute when Officer Crockett reholstered his firearm. Brooks then took Cujo to a veterinarian, incurring bills of $377.83.

### B. *Procedural Background*

On November 22, 1993, Brooks filed an administrative tort claim with the National Park Service for $377.83. This claim was denied on May 23, 1994. At that time, none of the other plaintiffs had filed administrative tort claims. Plaintiffs filed this suit in federal court on March 2, 1994, based on common law tort and constitutional violations. The common law tort claims arise under 28 U.S.C. § 1346(b) (1992), of the Federal Tort Claims Act (FTCA). The Constitutional claims arise under 28 U.S.C. § 1331 (1980). *Bivens v. Six Unknown Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

On November 9, 1994 defendants moved for summary judgment on plaintiffs' complaint. They claimed that, with the exception of Brooks' claim for $377.83, plaintiffs' common law tort claims were barred by 28 U.S.C. § 2675 (1966) of the FTCA. They also asserted that there was no dispute as to any material fact that would defeat defendants' entitlement to summary judgment as to the Constitutional claims. On May 16, 1995 the Court granted defendants motion as to the Constitutional claims brought by plaintiff and as to the civil tort claims brought against the individual defendants. The Court deferred ruling on the common law tort claims against the United States pending resolution of the record as to administrative claims. Plaintiffs have since represented to the Court via declaration that all plaintiffs have exhausted their administrative remedies and that their claims are now properly before the Court. Pursuant to this Court's order of October 10, 1996, the United States renewed its motion for summary judgment on November 20, 1996, seeking adjudication of plaintiffs' remaining claims in its favor.

On March 10, 1997 plaintiff moved for default as to defendant Babbitt. That default was declined by the Clerk of the Court the next day. Plaintiff then moved the Court to enter default judgment against defendant Babbitt. Defendant Babbitt has responded, and that motion is currently before the Court as well.

### B. *Legal Standard*

### 1. *Summary Judgment*

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(e).

In a motion for summary judgment, "[i]f the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, '*specific facts* showing that there is a genuine issue for trial.' " *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103–04 (9th Cir.), *cert. denied*, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986).

A moving party who will not have the burden of proof at trial need only point to the insufficiency of the other side's evidence, thereby shifting to the nonmoving party the burden of raising genuine issues of fact by substantial evidence. *T.W. Electric*, 809 F.2d at 630 *citing Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Kaiser Cement*, 793 F.2d at 1103–04.

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party.

*T.W. Electric,* 809 F.2d at 630–31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Ting v. United States,* 927 F.2d 1504, 1509 (9th Cir.1991).

The evidence the parties present must be admissible. Fed.R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. Niagara Falls,* 754 F.2d 49 (2nd Cir.1985); *Thornhill Pub. Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979). Hearsay statements found in affidavits are inadmissible. *See, e.g., Fong v. American Airlines, Inc.,* 626 F.2d 759, 762–63 (9th Cir.1980). The party who will have the burden of proof must persuade the Court that it will have sufficient admissible evidence to justify going to trial. The standard for judging a motion for summary judgment is the same standard used to judge a motion for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### 2. *Entry of Default and Default Judgment*

Under Federal Rule of Civil Procedure 55, the Court may enter a default judgment against a defendant who has failed to file an answer or motion to dismiss within twenty days from the date the complaint was filed,. or within such additional time as the Court has granted. The default rule serves to protect a diligent party "lest he be faced with interminable delay and continued uncertainty as to his rights." 10 Charles A. Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2681, at 402 (2d ed.1983).

Plaintiff has applied for a default judgment. Federal Rule of Civil Procedure 55(b)(2) authorizes the Court to enter such a judgment against a defendant against whom default has been entered, assuming the defendant is not an infant, incompetent person, or the United States. The rule sets forth the appropriate procedure: "If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application." The rule also provides that the Court may order whatever hearings or documentation are necessary to establish damages, or fairly consider any other matter.

## II. ARGUMENTS

### A. *Motion for Summary Judgment*

In its order of May 16, 1995 the Court deferred ruling on plaintiffs' common law tort claims against the United States, as plaintiffs had failed to demonstrate that they had exhausted their administrative remedies. Plaintiffs have since exhausted their administrative remedies and have filed a supplement to their complaint so indicating. Therefore, plaintiffs' claims against the Untied States are now properly before the Court.

In its renewed motion for summary judgment, defendant United States of America argues that plaintiffs have failed to establish the factual basis for any common law torts committed against them by agents of the United States. As the Court concluded in its previous order that the shooting of Cujo was not actionable, the only cause of action the Brooks family may bring is for Ranger Crockett's conduct after the dog was shot. Although it is not at all clear from plaintiffs' complaint what torts are being alleged, it appears to the government and to the Court that plaintiffs' complaint can be read as alleging that defendant Crockett committed the torts of assault and infliction of emotional distress by failing to holster his revolver after shooting Cujo.[1] These allegations are dealt with in order.

---

**1.** Plaintiffs allege at paragraphs 16 and 17 of their complaint that:

    Plaintiffs were fearful and believed their lives, personally, were imminently threatened and endangered by utterly reckless disregard for life or property by defendant, ranger Crockett.

    Defendant, ranger Crockett's, arbitrary conduct willfully, maliciously, and recklessly endangered plaintiffs in reckless disregard for

## 1. Assault

■ According to the Restatement Second of Torts, in order to state a cause of action for assault a plaintiff must establish (1) that defendant intended to cause harmful or offensive contact, or the imminent apprehension of such contact, and (2) that plaintiff was put in imminent apprehension of such contact. Restatement 2d of Torts, § 21. Plaintiff argues that defendant has failed to establish the intent of defendant Crockett to create the imminent apprehension of harmful or offensive contact.

Ranger Crockett states in his declaration that after he fired on Cujo, he followed the dog with his revolver drawn as it ran from him. At that point, Crockett testified, plaintiff Brooks ran to the dog and Crockett, not knowing the dog belonged to Brooks told him to move away from the area. Crockett states that after Brooks got the dog under control and explained that he was the dog's owner, he re-holstered his weapon.

In contrast, Brooks states in his declaration that:

> As I tried to protect my dog while the Ranger yet held his gun upon us, I said to the Ranger, "Please don't shoot. He's good with kids. He's my dog. What are you doing." While I held my dog by the collar the Ranger held his gun on me and told me to move away from the dog or he would shoot. The Ranger continued to repeat, "Move away, move away now!" as I pled for him to not shoot my dog. And, as he was yelling he was waving his gun at all my family members, the three children and my father, causing the children to cry.

Declaration of Michael S. Brooks, Sr. in Support of Opposition to Motion for Summary Judgment at ¶ 11. Similarly, Brooks' father, Fred, declares that:

> As Michael held his dog and identified himself as the owner, Ranger Crockett continued pointing his weapon at him and to order Michael (and the rest of the family) to "Move away from the dog", while he waved his weapon around all the children and directly in my face as I tried reasoning

lives and safety of plaintiffs and others, without probable cause, warrant or other legal process

with him to put his gun away. Michael Brooks, Sr. continued pleading with the Ranger to quit trying to shoot his dog.

Declaration of Fred J. Brooks in Support of Opposition to Motion for Summary Judgment at ¶ 8.

■ The Court finds that, even reading the declarations of Brooks and his father in the light most favorable to their case, those statements fail to establish a case for assault. Plaintiffs have alleged, at most, that Ranger Crockett overreacted to the threat posed to him. Ranger Crockett is described by the Brookses as being out of control, swinging his gun around and shouting at persons who clearly posed no threat to him. This description, however, is insufficient to establish a claim of assault. Assault is a tort of specific intent; a plaintiff must prove that defendant intended to place plaintiff in a reasonable apprehension of harmful or offensive contact. Here, the testimony of the Brookses is insufficient to give rise to an inference of intent to put plaintiffs in reasonable apprehension of harmful or offensive contact; at most it gives rise to an inference of recklessness. However, merely reckless behavior cannot give rise to an assault cause of action. *Id.* at § 31.

As the evidence submitted by plaintiffs is insufficient, as a matter of law, to support a finding of assault, the Court hereby GRANTS defendant's motion for summary judgment as to that count.

## 2. Infliction of Emotional Distress

The other possible reading of plaintiffs' complaint is that they are alleging that defendant Crockett's conduct amounted to the infliction of emotional distress.

■ In order to state a cause of action for the intentional infliction of emotional distress, a plaintiff must show: "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress." *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155 n. 7, 233 Cal.Rptr. 308, 729 P.2d 743.

under color of authority and, in cloak of his office.

Only conduct "exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress" is actionable. *Id.* quoting *Prosser, Law of Torts* (4th ed.1971) at 54.

■ In contrast, a cause of action for negligent infliction of emotional distress requires that plaintiff show (1) serious emotional distress, (2) actually and proximately caused by (3) wrongful conduct (4) by a defendant who should have foreseen that the conduct would cause such distress. *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 922, 167 Cal.Rptr. 831, 616 P.2d 813 (1980).

■ In its previous order in this matter, the Court found that under the circumstances, Ranger Crockett had probable cause to shoot Cujo in self defense. The Court now finds that even if the facts were as plaintiffs have stated them, Ranger Crockett's conduct continued to be reasonable after the dog was shot. The parties agree that after Cujo was shot, Brooks, who had been overheard in a heated conversation with his father, ran to the dog. Although the parties disagree regarding when Ranger Crockett re-holstered his weapon, the Court finds that it would have been reasonable for him to keep his weapon pointed at the dog until he could assure himself that the dog did not pose a threat to himself or others. Although this conduct may have been distressing to the members of the Brooks family who were located nearby, the Court finds that it is insufficient to support a cause of action for the infliction of emotional distress.

Therefore, as plaintiffs have failed to demonstrate that Ranger Crockett's behavior was wrongful, let alone that it rose to the level of outrageous conduct, the Court finds that defendant is entitled to summary judgment as to plaintiff's negligent and intentional infliction of emotional distress claims.

B. *Default Judgment*

■ Although the Clerk of the Court declined to enter default against defendant Babbitt, plaintiffs have requested that the Court enter default judgment in their favor. As default has not been entered against de-

fendant Babbitt, the entry of default judgment would be inappropriate. The entry of default judgment is a two-part process; default judgment may be entered only upon the entry of default by the Clerk of the Court.

Furthermore, the government argues that defendant Babbitt has been dismissed from this case and that as a result, the entry of either default or default judgment against him would be inappropriate. This appears to the Court to be correct. In its order of May 16, 1995, the Court dismissed each of the common law tort claims brought against the individual defendants, including defendant Babbitt. At the conclusion of the Court's order, the Court made clear that the only unadjudicated issue remaining was whether plaintiffs could bring their common law tort allegations against the United States. Therefore, as there are no pending claims against defendant Babbitt, and the entry of default against him was properly declined by the Clerk, the entry of default judgment against defendant Babbitt would be inappropriate.

### III. CONCLUSION

For the reasons stated above, the Court hereby rules as follows:

a) Plaintiffs' claim for assault against the United States is hereby summarily adjudicated in favor of the United States.

b) Plaintiffs' claims for the infliction of emotional distress against the United States are hereby summarily adjudicated in favor of the United States.

c) Plaintiffs' motion for entry of default judgment is hereby DENIED.

IT IS SO ORDERED.